# IN RE HEARD'S GUARDIANSHIP.

(Division B. Oct. 28, 1935. Suggestion of Error Overruled Nov. 25, 1935.)

[163 So. 685. No. 31868.]

**E. F. Coleman,** of Purvis, for appellants.

**Ethridge, P. J.,** delivered the opinion of the court:

On October 27, 1931, Laura Heard filed a petition in the chancery court of Forrest county, Mississippi, praying for appointment as guardian of Ruth Heard, a minor seventeen years of age, reciting as follows: "Comes now Laura Heard, a resident citizen of Hinds County, Mississippi, and would state and show the facts following: That she is the mother of Ruth Heard, a minor, now of the age of seventeen years, and that by reason of the death of John Heard, the father of said minor, said minor has inherited a small sum of money, less than the sum of One Hundred dollars; and that it is necessary to have a guardian appointed for the estate of said minor. Petitioner would further show that she is a suitable person to be appointed such guardian, wherefore, petitioner prays that she be appointed guardian of the estate of her minor daughter and for such other and further relief as she may, in equity, be entitled."

The chancery clerk of Forrest county issued letters of guardianship, on October 27, 1931, to said Laura Heard upon bond in the sum of one hundred dollars having been approved.

A petition was filed by said Laura Heard reciting that on the 13th day of October, 1931, John Heard, her husband, and the father of said minor, was killed by the operation of a train in the city of Hattiesburg by the Gulf & Ship Island Railroad, and that said John Heard died intestate leaving his widow, three sons all over twenty-one years of age, and Ruth Heard, a minor daughter. Said petition set forth that there was a contention between the heirs of John Heard and the railroad company as to how the injury was inflicted that resulted

in the death of said John Heard, and that it was thought to be best to accept a compromise and settle said claim, and prayed that the court authorize her to settle the claim. This petition was presented to the chancery court of Forrest county on the 27th day of October, 1931. The chancellor entered an order, on October 28, 1931, authorizing a settlement of the suit against the railroad company, and on the 4th day of April, 1935, a decree was entered reciting that the minor's interest amounted to only one hundred twenty dollars, and that said sum had been expended in the support and maintenance of said minor, and that said guardian and her bondsmen be discharged.

On the 20th day of April, 1935, a petition was filed by Laura Heard and Ruth Heard, reciting that certain petitions were filed in the chancery court of Forrest county purporting to have been filed by Laura Heard asking that she be appointed as guardian of Ruth Heard, then a minor, and that said Laura Heard, as guardian, be permitted to settle a doubtful claim for her ward, the said Ruth Heard, against the Gulf & Ship Island Railroad Company for the sum of twenty-four dollars. The petition further set forth that these petitions above referred to were all filed without the knowledge or consent of said Laura Heard, and that she did not learn of same until recently. The petition stated that Ruth Heard, at the time of the filing of said petitions above referred to, and the signing of the decrees thereon, was a resident of Hinds county, and was for a long time after said date, October 27, 1931; that the decrees entered in said guardianship matter are void and of no effect; and that if not set aside, by this court, a great and irreparable injury will be done the petitioner Ruth Heard. The petition prayed for general and special relief.

On the hearing, Laura Heard testified that in October, 1931, when John Heard was killed, Ruth Heard, her daughter, then seventeen years of age, was a resident,

with her mother, of the city of Jackson, in Hinds county, Mississippi. Ruth Heard testified that at the time mentioned, October, 1931, she was living in Hinds county, Mississippi; that they moved to Hattiesburg in January, 1932.

Thereupon, F. M. Morris was called by the court as a witness, and testified that he was a member formerly of the firm of Morris & Wingo, which firm represented Laura and Ruth Heard in the guardianship proceedings, and that his recollection was that Ruth's father was killed by a freight train of the Gulf & Ship Island Railroad one afternoon about three or four o'clock, and that she, her mother, and her two brothers, were brought to his office by Garnet Jones before the father was buried, and that he represented them in the settlement. An objection was interposed to his testimony because he had represented the parties at the time. Morris then testified that the first time he saw them was the day following the death of their father and husband, and that the settlement was made to get money to bury him, and that the family had a house with furniture in it as a normal family would. He further testified that he thought it was the house of Garnet Jones but he did not know; that all of them were there. No ruling appears in the record to have been made to objections to this testimony.

It is the contention here that the chancery court in granting letters of guardianship was exercising statutory jurisdiction, and that the petition originally filed in the chancery court showed that the guardian was a resident of Hinds county and not of Forrest county. It will be noted from the petition filed that nothing was said therein as to the residence of the minor. It appears in the petition filed for a settlement and compromise against the railroad that the father was killed in the city of Hattiesburg, Mississippi.

The chancery court, in exercising its jurisdiction over guardianships and minors and their business, has general and constitutional jurisdiction, and all facts neces-

sary to sustain jurisdiction or decrees of the chancery court are presumed to exist unless the contrary appears in the record. In Ames v. Williams, 72 Miss. 760, 768, 17 So. 762, 764, this court said: ''We are at a loss to conceive upon what principle it could be held that the chancery court, as to the jurisdiction conferred upon it by the constitution, is an inferior court, in that sense in which the word 'inferior' is used to characterize courts whose records must affirmatively show their authority to act in the particular cause. If the court of chancery be such inferior court, so also must be the circuit court and this court, for each is equally limited, in the sense that its jurisdiction is not universal. This court has no original jurisdiction nor has it jurisdiction of all appeals from inferior tribunals. There are appeals to the circuit court, and in some cases the judgment of that court is final. The jurisdiction of the circuit court is limited by a minimum, as those of justices of the peace are limited by a maximum, sum; nor can it be held that as to some subjects of jurisdiction conferred by the constitution the chancery court is a court of general and as to others a court of inferior, jurisdiction. If as to matters of general equity its jurisdiction is held to be general, upon what ground shall its jurisdiction in matters of administration and of minors' business be held to be that of an inferior and limited tribunal? Nor does the fact that the jurisdiction in matters of administration and guardianship is, in its exercise, restricted by county lines convert the court from one of general to one of inferior jurisdiction. Undue importance has in many cases been given to the fact that, in matters of this character the court is one having jurisdiction in a single county or city. But none of our courts of original jurisdiction are unrestricted territorially, save by state lines. As to all, there are territorial limits of judicial districts. The terms of all are fixed to be held within counties, and jurisdiction is exercised over persons and property with-

in the counties, as distinguished from the state at large or the judicial districts thereof."

The petition being silent as to the residence of the minor, it will be presumed that the minor was a resident of the county in which the letters of guardianship were granted. It will also be presumed that the court made inquiry and ascertained the facts necessary to sustain its action.

As to the testimony of the attorney, we think the competency of such evidence is not here presented, for the reason that no ruling was insisted upon, and that it was waived.

We say in passing that the railroad company was not made a party to the petition to set aside the decree and the settlement involved. All the papers show on their face that the settlement was made and approved by the chancery court. The railroad company not having been made a party to the proceeding, the judgment of the court below will be affirmed.

Affirmed.