# Prudential Ins. Co. *v.* Gleason *et al.*

(In Banc. March 20, 1939.)

[187 So. 229. No. 33445.]

Moody & Davis and Gordon L. Lyon, all of Indianola, for appellants.

Sam L. Gwin, of Greenwood, for appellees.

264

**Griffith, J.,** delivered the opinion of the court.

Oliver Eastland died intestate in Sunflower County in December, 1919, leaving as his only heirs his widow and five minor children. The oldest child, Betty C. Eastland, now Gleason, was at that time twelve years of age. Mr. Eastland owned in fee simple a plantation of about 612 acres, in four neighboring tracts. Two of these aggregating approximately 112 acres are practically adjacent and are referred to in the record as "the Home Place." The other two tracts, aggregating approximately 500 acres, are sufficiently close together to be considered one tract. He owned also a half-interest in 2.34 acres, referred to in the record as the gin site.

After Mr. Eastland's death the widow, with the voluntary aid of Woods C. Eastland, a brother of the deceased, continued to operate the plantation. In January, 1922, the widow married Pentecost, and it was thereafter deemed advisable that the property be divided in kind between the former widow and her children, so that the

portion to which the children would be entitled should be set apart to them separately from that of their mother.

In the attempt to carry out this plan, a petition was filed on October 14, 1924, to remove the disabilities of the minority of Betty C. Eastland, then seventeen years of age, and on that date a decree was rendered removing her disabilities specially but not generally. On the same day a petition was filed praying the appointment of Betty C. Eastland as guardian of her four younger brothers and sisters; and a decree was made appointing Betty as guardian, and she gave bond, received letters and proceeded to discharge the duties of a guardian.

Less than two months thereafter, on December 8, 1924, Mrs. Pentecost, and Betty C. Eastland in her own behalf and as guardian for her four minor brothers and sisters, filed an ex parte petition for the partition of all the lands above mentioned, and prayed that the 112 acres be set apart in severalty to Mrs. Pentecost as her share, and that the remainder be allotted in solido to the five children as their aggregate share. The prayer of this petition was granted, and it was ordered that Betty C. Eastland for herself and as guardian for her minor tenants in common make a deed to Mrs. Pentecost for the Home place of 112 acres, and that the latter execute a deed to the children for the remaining land, which was accordingly done.

Mrs. Pentecost having taken exclusive possession of the 112 acres allotted to her, later gave, as if the sole owner of the said 112 acres, a deed of trust thereon to appellant, the Prudential Insurance Company, which deed of trust was validly foreclosed by a sale in pais on July 20, 1935, at which sale the insurance company became the sole purchaser, and received the trustee's deed. The remaining lands allotted to the children were divided in kind among themselves by partition in pais and by deeds in pursuance thereof, executed during the months of December, 1933, and January, 1934, the disabilities of those who were then still minors having been removed

for that purpose, and each entered into possession of his severed portion.

Sometime during the year 1935, the children or some of them having learned, for the first time, of the real facts touching all the steps theretofore taken, and as have been above briefly outlined, and that all said proceedings had in fact been invalid, the four children, other than Betty, filed their bill on December 17, 1935, against Betty and against Mrs. Pentecost, and the insurance company, praying that the ex parte judicial partition proceedings above mentioned be declared void; that the 112 acres allotted to Mrs. Pentecost be partitioned in kind, and that they recover their interest of one-sixth each in the said 112 acres. Betty C. Eastland answered, admitting the allegations of the bill, and suggested that she also was entitled to her one-sixth interest in said 112 acres. The insurance company answered denying that the judicial partition proceedings were void, and filed its cross-bill averring that the proceedings were valid, or, if not, that the children, by their subsequent partition of the remaining land in pais among themselves, had ratified the judicial partition, and if mistaken in both of the foregoing contentions then in the alternative that the insurance company was, in equity as the assignee of Mrs. Pentecost, the owner of an undivided one-sixth interest in the entire property of more than 610 acres, and demanded a partition thereof between appellant and the other tenants; and if still mistaken, the cross-bill prayed for general relief.

It is to be noted that the children in attacking the original partition did not bring back into the factual equation the whole tract of 612 plus 2.34 acres, but make the effort to hold on to the portion received by each of them in severalty and at the same time to obtain an undivided one-sixth in the portion assigned in severalty to Mrs. Pentecost and by her alienated to the insurance company. They demurred to the cross-bill, the demurrers

were sustained, the cross-bill was dismissed, and a partition was ordered solely of the 112 acres.

The above thumbnail sketch, together with such further of the facts as will be later mentioned, will furnish, as we think, a sufficient statement of the facts to bring out the legal questions which we are called on to decide.

Although the statutes are silent on the subject, a minor cannot be appointed guardian of another minor, for this would not be within the purposes for which a guardian is appointed. A guardian, as the name implies, is a person appointed by the court to guard the interests of another person who, by reason of infancy, lunacy, or the like, is incapable of guarding his own interests without aid. It would be an anomaly that a minor, disabled by reason of his infancy, should have another infant likewise disabled and incompetent, to take care of him as guardian. Moreover, a guardian before being allowed to receive letters must execute a guardian's bond, and an infant has no capacity to execute such a bond as a binding instrument.

It is unnecessary to decide whether an infant whose disabilities of minority have been generally and fully removed in a judicial proceedings and by a final judicial decree to that effect may be appointed guardian; because here the decree removing the disabilities of minority was special and limited as follows: "It is therefore ordered and adjudged and decreed that the disability of minority of the said Betty C. Eastland be and the same is hereby specially removed; that said Betty C. Eastland is hereby empowered to do any and all acts in reference to her property that meets with the approval of her uncle, W. C. Eastland, and which approval must be in writing." Her authority under that decree was a conditional power to deal with her own property, whereas a guardian deals with the property of another and a different person,—treating, for the purposes of this case, but not as decision, the recital in regard to the necessity of approval by her uncle as surplusage. We say nothing of the effect of

the acts of a minor, as guardian, who, although a minor, has been appointed guardian. What we are pointing to is that the acts of a minor as guardian do not irrevocably bind her as an individual and as to her individual property therein.

Under chapter 130, Laws 1918, which was in force, unamended, at the time of the attempted partition proceedings herein, it was provided that in such a proceeding "an infant may sue by next friend as in other cases." There is no provision therein by which an infant may appear as complainant or petitioner in a partition proceedings otherwise than as quoted,—"by next friend as in other cases." The petition for partition, in attempting to make the minors as parties complainant or as petitioners, recites as follows: "Comes . . . . Betty Eastland of her own right, . . . and Betty C. Eastland, guardian of the estate of Woods C. Eastland, Oliver Eastland, Viola Eastland and Chester Eastland, all minors, and with respect would show, etc."

It will be observed that Betty C. Eastland assumed to petition as guardian, and not in the name of the minors as their next friend. And if we take recourse to the liberal rule as illustrated in Aetna Indemnity Co. v. State, 101 Miss. 703, 723, 57 So. 980, 39 L. R. A. (N. S.), 961, and allow the characterization as guardian to be translated and also here transposed, so as to make Betty C. Eastland, the next friend, we are at once met with the proposition that thereby the next friend of the minors was then also a minor.

It is an elemental proposition that a minor may not prosecute in a judicial proceeding solely in his own name and acting alone. He must sue by next friend, unless expressly authorized by statute to proceed otherwise. This is required as a means of aid and protection to the minor. And there is no discretion in the court to dispense with this requirement when it is expressly and plainly imposed by statute in the particular proceeding, and particularly so when the estate and interest of minors

are so seriously concerned as in a partition of their real property.

In holding, as we do, that the provision of the statute as it then existed, that a minor may sue in partition by next friend was an exclusive and indispensable requirement, we are within the reason and the principle to which the court gave adherence in Jackson v. Jackson, 105 Miss. 868, 63 So. 275, Ann. Cas. 1915D, 489. We are mindful, of course, that in the Jackson case the court was exercising a strictly statutory jurisdiction, and that the rule is that in the exercise of a general common-law or equity jurisdiction, the fact that a minor is not represented by next friend is a procedural matter and not one of substance, 14 R. C. L., pp. 280, 281, 31 C. J., pp. 1121-1123; and we understand, too, that a partition proceeding is of equitable origin, Paddock v. Shields, 57 Miss. 340, and that in the absence of statutory regulation the courts will exercise their powers according to the ordinary rules; but where instead of leaving a particular matter to be proceeded with under the ordinary common-law rules in law or in equity, the lawmaking power has expressly prescribed by statute the particular manner in which the particular jurisdiction may be exercised, a substantial compliance with the mode thus prescribed is, as to its protective features, mandatory, rather than directory and dispensable. 15 C. J., sec. 275, p. 901; 2 Lewis' Sutherland Statutory Construction (2 Ed.), section 627 et seq. It is true that such compliance may be, and often is, waived by competent parties, in the several different ways recognized by law, but minors are not competent during their minority to waive statutory modes enacted for their benefit and protection.

And the same reasoning to which we have adverted, in respect to a minor as guardian for another minor, applies to a minor as next friend to another minor. The law being that a minor, on account of his incompetency of minority, may not sue except by the aid and assistance of a competent next friend, that next friend must not

be under the same disability, but must be an adult. To paraphrase the language hereinabove used in regard to a minor as a guardian to a minor, it would be an anomaly that a minor disabled, on account of his infancy, to bring suit without a next friend, should have as his next friend another infant likewise disabled and incompetent.

And the situation is not aided here by the partial removal of the disability of minority of the next friend, the terms of the decree in that respect having been already quoted; and thus it is unnecessary to decide whether a minor whose disabilities of minority have been fully and completely removed may appear as next friend.

The four minors were never in court in the partition proceeding; they were never brought therein as required by the statute. Indeed, the case is that Betty C. Eastland herself was never in court in that partition proceeding, for she was a minor, whose disabilities had not been removed so as to allow her to sue and be sued, and there is no allegation whatever, either direct or convertible, that any next friend appeared therein for her. But this latter is immaterial, for the proceeding being void as to the other four minors was void as to all parties. And the facts which rendered it void were open to all adult persons who, in the exercise of the requisite diligence subsequently dealt with these titles,—the record of the chain of title disclosed everything of the facts which has herein been said about the matter.

In this immediate connection, it may be observed that much of the argument of appellant is directed to the insistence that although Betty C. Eastland was in fact a minor, the decree of partition cannot be collaterally attacked on that account. When a decree of a court of general jurisdiction is questioned on account of want of jurisdiction of the parties, and the record which is the foundation of that decree is silent as regards the point upon which the attack is based, a conclusive presumption arises, as against a collateral attack, that the court inquired into the facts necessary to give it jurisdiction and

found upon such inquiry that the necessary jurisdictional facts were present. Brotherhood of Railroad Trainmen v. Agnew, 170 Miss. 604, 613, 155 So. 205; In re Heard's Guardianship, 174 Miss. 37, 43, 163 So. 685. But this presumption disappears, of course, when the record itself stands athwart and shows to the contrary of what the stated presumption would import into the decree; and a collateral attack is then admissible. 34 C. J., pp. 551, 552, secs. 850 (4), 851.

Here, in the body of the partition petition itself, the foundation pleading, there is the express allegation, in the eighth paragraph, that the disability of minority of the petitioner, Betty C. Eastland, had been removed by a decree of that same court ''on the —— day of October, 1924,''—less than two months before the filing of the partition petition. The record shows on its face, therefore, that any inquiry, if made, would have inescapably disclosed the fact to a certainty that Betty C. Eastland was then a minor less than eighteen years of age and whose disabilities of minority had been only partially removed.

If the record in the partition proceeding had been silent whether Betty C. Eastland was a minor or an adult, and whether her brothers and sisters were minors or adults, or the decree had expressly adjudged each of them an adult, the decree would be impervious to a collateral attack on the ground of the minority of any of them, Eubanks v. McLeod, 105 Miss. 826; Id., Miss., 63 So. 226, 69 So. 289, even though, in fact, they and each of them were at the time minors and hence were never in court,—this on the ground of an essential public policy that faith and credit shall be accorded to the decrees and judgments of courts; but this right of reliance belongs only to those who are within the reasons of the protection, not to those who, when they look upon the record itself, may there see that which makes the judgment or decree invalid.

Appellant argues also, as already mentioned, that the abortive partition proceedings were cured by way of rati-

fication or estoppel by the subsequent partition in pais by the five heirs, other than Mrs. Pentecost, of the remaining 500 acres. The evidence shows that these minor heirs knew nothing of the real facts now revealed, and being infants at the time cannot be charged with any want of diligence. They acted promptly after discovering the facts; and this is all that is necessary to say on that point, except it must be added that inasmuch as the five heirs other than Mrs. Pentecost are holding in severalty, by a division in pais among themselves, the more than 500 acres set aside to them in the abortive judicial partition, they cannot disaffirm and renounce that judicial partition except by restoring the status quo ante. Since, however, we are reaching an equivalent result, so far as justice requires, by what we are to say in the succeeding portion of this opinion, we do not pursue the discussion as to the obligations of infants as to restoration, etc., upon an election of disaffirmance.

The partition proceedings having been void, and not having been cured, if curable, the final questions are as to what shall be done about the situation in which appellant finds itself as the vendee in severalty of the 112 acres which was allotted to Mrs. Pentecost in the abortive partition. It is the contention of appellees, relying upon Richardson v. Miller, 48 Miss. 311, and Kenoye v. Brown, 82 Miss. 607, 35 So. 163, 100 Am. St. Rep. 645, that appellant has no other than an undivided interest in the 112 acres conveyed to it by Mrs. Pentecost, and has no legal interest as a tenant in common, or as an assignee, in the other lands; and this is, of course, correct. Appellant contends, in the alternative, that under the allegations and prayer of its cross-bill, the whole land of approximately 612 acres, as well as the 2.34 acres, should now be partitioned in kind, and, not that any part of the lands other than the 112 acres might be allotted to appellant, but if it can be done without injustice to the other of the original tenants in common, that there should be set aside to appellant that portion of the land which

was conveyed to it in severalty by one of the tenants in common, Mrs. Pentecost, and that the other five tenants in common should be required, if practically possible, to take their shares out of the remaining lands; and we think that, to the extent and under conditions hereinafter mentioned, the contention last stated should be upheld.

At this point we may notice the argument of appellees that the allegations and the prayer of the cross-bill are not sufficient to present and require action by the court as respects the stated alternate contention of appellant. We think appellees are mistaken in this, and we refer to the rule as laid down in Milam v. Paxton, 160 Miss. 562, 569, 134 So. 171. And we may add also under sections 2922, 2923, Code 1930, the court has the power and duty in partition proceedings to adjudicate and adjust all the equities between the parties and to that end a cross-bill is, of course, available when necessary, such a cross-bill to be dealt with as in other suits in chancery.

In Richardson v. Miller and in Kenoye v. Brown, supra, there had never been any attempted partition between the parties owning the whole estate as tenants in common,— no partition either in pais or by judicial decree. There the tenant conveying, simply of his own independent action, conveyed a part of the whole property as if the part conveyed had been set apart to him in severalty, which latter had not been done, and the vendee knew it or could easily have ascertained that bare fact. But even in those cases, it was said that if in a subsequent partition of the entire tract of the lands, the particular part previously conveyed by metes and bounds should be assigned to the cotenant who had thus conveyed, the title would inure by virtue of the doctrine of estoppel to his grantee.

We have no difficulty, therefore, in saying that where there has been a partition in pais, and each cotenant takes possession of his assigned part, as if in severalty, and the partition fails of effect, because of the infancy

of one or more of the parties, or for some other reason by which the partition is avoided, or if, as in the case now before us, there has been an ostensible partition by judicial decree, followed by a further partition in pais, and the parties have each taken possession of his assigned part as if in severalty, and the partitions fail for reasons such as have been mentioned herein, and in either of such cases one of the cotenants has conveyed his assigned part by metes and bounds, the court should so order the partition, when it can be done in kind, as can be done here, as to allot to the vendee the particular part which he has purchased from the ostensible holder in severalty; and if in order to make an equal division as respects values, a resort to owelty against the conveyed portion be necessary or a deduction therefrom in kind, this should be done if practicable thereby to reach the ends of equity and equality as between the several parts of the whole.

And in order to reach this end of obvious justice, the court, in any partition where the facts are such as set forth in the foregoing paragraph, and where there has been a disaffirmance by some of the tenants in common, should allow all the lands to be brought into the proceeding, not that a vendee of a tenant in common may have or take any part, in or of the land not included in the vendee's deed in severalty, either in kind or by way of owelty, but to present the issue whether the whole land can be so divided as to allot to the vendee the land which had been conveyed to him and at the same time give to the others of the original tenants in common out of the remaining lands their just share of the original whole, taking away from the lands of the vendee in kind what is necessary to make the other tenants equal in value or by requiring owelty of the vendee; but in no case, as we repeat, awarding to the vendee any part of the other land, or anything in owelty.

The rule which is outlined in the foregoing paragraph is sustained by the authorities, even when there has been

no attempt at a previous partition and the taking of possession by the tenants in severalty, 20 R. C. L., p. 732, sec. 14; 47 C. J., pp. 486, 487, secs. 538, 539, and the cases reviewed in the notes 114 Am. St. Rep. 81; and thus it could not be otherwise in a case such as here before us, where there has been a previous partition, although invalid, and a taking of possession in severalty thereunder, and thence a disaffirmance by some of those originally in interest. The whole matter gets back to the maxim that he who seeks the aid of a decree of the chancery court shall do equity to the parties who will be affected by that decree. This maxim is no less operative in partition proceedings than in any other cause or matter in chancery. Appellees cannot avoid the operation of that principle by an effort to confine the partition to the particular tract theretofore conveyed in severalty and at the same time hold on to what they have received in ostensible severalty of the remaining lands, but must submit to the proper judicial inquiry whether they may not be made whole, and receive their just share out of a division of the remaining lands with such contribution, if any, out of the conveyed portion as may be necessary to make the other of the original tenants in common equal in value of their several shares, as compared with the share conveyed to the vendee, and certainly they can have no obligation to this in point of justice, when it is, as it must be, without any risk that any part of the remaining lands, or any owelty, will be taken therefrom to make the vendee's conveyed portion equal in value to the other portions. The principle is, at last, that no party should object to, or complain of, that which will do him no harm, but will do the right to and for an opposite party.

The demurrers to the cross-bill should have been overruled. The decree is, therefore, reversed and the cause is remanded to be proceeded with as indicated in the foregoing opinion.

Reversed and remanded.