**C. J. PECK OIL CO. et al. v. DIAMOND, by BOND et al.**

No. 14366.

United States Court of Appeals
Fifth Circuit.

May 1, 1953.

180

M. M. Roberts and Homer W. Pittman, Hattiesburg, Miss., Luther W. Maples, Gulfport, Miss., for appellants.

Webb M. Mize, James S. Eaton and R. W. Thompson, Jr., Gulfport, Miss., Gray-son B. Keaton, Picayune, Miss., for appellees.

Eaton & Cottrell, Gulfport, Miss., for intervenors.

Before HOLMES, STRUM and RIVES, Circuit Judges.

STRUM, Circuit Judge.

This action grows out of an early morning collision between a large oil transport truck operated by an employee of defendant C. J. Peck Oil Company, proceeding in a southerly direction on U. S. Highway No. 11 near McNeill, Mississippi, and a "shuttle" truck loaded with ice cream products and ice, operated by Carmen D. Diamond, now deceased, traveling north on the same highway. Said deceased was the father of the plaintiff below, a nine year old minor, who alleged, and the jury found, that the collision was caused by the negligence of the oil truck driver. This appeal is from the judgment entered upon the jury's verdict awarding plaintiff $20,000 damages.

The testimony presents the usual conflicts as to the cause of the collision. The terrain in the vicinity of the collision is slightly "rolling." Appellants claim that the oil truck was proceeding south at 30 to 35 miles per hour on its own right (west) side of the highway, when just as it came to the crest of a small hill it was suddenly confronted by the ice cream truck coming up the other side of the hill proceeding north, at 65 to 70 miles per hour, on the wrong side of the highway. The oil truck driver testified that he swerved the oil truck sharply to the left and onto his own left (east) side of the highway, in an effort to avert a collision, but that the ice cream truck, still traveling at a high rate of speed, pulled back toward its own right lane (east) and the collision occurred about the middle of the highway. The driver of the ice cream truck, and a woman companion riding with him, were killed by the impact.

Plaintiff's version of the collision is that the ice cream truck was traveling in its own right lane on the east side of the highway, and that the oil truck came over the crest of the hill angling to the

left, and proceeded onto the east (or wrong) side of the highway where it struck the ice cream truck. Plaintiff further claims that although the ice cream truck had just overtaken and passed another car traveling north on the southerly slope of the hill, which required the ice cream truck to temporarily cross to its own left side of the highway, it had completely returned to the right (east) side of the highway before the collision.

The jury accepted plaintiff's version, for which there is ample support in the evidence. A state highway patrolman, and a deputy sheriff, who arrived on the scene shortly after the collision, and before either vehicle was moved, each testified in substance that when they arrived the ice cream truck and the tractor part of the oil truck were on the east shoulder of the highway, which would be the ice cream truck's right side, and that the debris or litter from the collision was on the east half of the highway and the east shoulder; that the oil truck was headed south at an angle of about 45 degrees with the highway, which would be approximately southeast, and the ice cream truck was also headed southeast. Apparently the force of the impact had swung the front of the ice cream truck from north around to the southeast.

There was only one skid mark on the pavement. It was made by the *left* front wheel of the ice cream truck and extended to the easterly edge of the pavement and onto the east shoulder. There were no skid marks behind the oil truck. The highway patrolman also testified that at the point in question a southbound vehicle would have unobstructed vision for 300 yards or more, and that there was a dirt shoulder, eight or nine feet wide, on each side of the concrete pavement, and no ditch of any appreciable depth alongside the shoulders. Photographs taken by the highway patrolman before the vehicles were moved corroborate the foregoing testimony. They show that the two vehicles came to rest with the rear end of the oil truck just to the east of the center line of the highway, and the front end of both vehicles well over on the east shoulder, both headed southeasterly.

Another witness testified that just before the collision he was driving north along the same highway approaching the crest of the hill where the collision occurred. He stated that the ice cream truck, traveling 50 to 55 miles per hour, passed him near the southerly foot of the hill, returning promptly to its own right side of the road, and that as it proceeded up the slope toward the crest of the hill it was completely on the right side. He further testified that as the ice cream truck reached a point about ten to fifteen feet from the top of the hill, the oil truck came over the hill at approximately a forty-five degree angle toward the left, and that when he first saw the oil truck the front wheels were "astraddle" the center line of the road, with the tractor part of the truck headed easterly; that the ice cream truck tried to get off the road to the right (east), and that the collision occurred "on the right side of the road, proceeding north." The evidence above summarized, which the jury was entitled to believe and apparently did believe, fully supports the verdict on the question of negligence.

■ We recognize the Mississippi rule stated in Ripley v. Wilson, 140 Miss. 845, 105 So. 476, that when the driver of a vehicle discovers another vehicle proceeding in the opposite direction on the wrong side of the road, it is the first driver's duty, if he can, to avoid a collision, and that if it reasonably appears that by turning onto his own left side of the highway he will avert a collision, it is his duty to do so. But the jury evidently found the facts against the defendants on this question. This proposition was correctly covered in the court's charge.

■ We have examined the other assignments based upon the trial court's charge to the jury, but find no reversible error. The court's charge taken as a whole, and not in isolated parts, fully and correctly states the applicable law. The effect of sole negligence on the part of the driver of the ice cream truck was fully covered, as well as the rule that when a

person is confronted with a sudden emergency, not of his own making, he is not held to the same accuracy of judgment as one who has time to pause and reflect, and that if he acts as a person of reasonable prudence would have acted in those circumstances he is not guilty of negligence. No specific charge on contributory negligence was requested, except one which peremptorily instructed the jury to find the driver of the ice cream truck guilty of contributory negligence, which was properly denied. There was no exception to the absence of a general charge on contributory negligence, nor any request for one, without which error can not be assigned on the failure to give it. Railway Express Agency v. Mallory, 5 Cir., 168 F.2d 426.

■■■ The minor plaintiff and her mother are citizens and residents of Louisiana. The deceased father was also employed in Louisiana by a corporation of that state. For the purpose of maintaining a proceeding in Louisiana to secure for the minor child the benefits of the Louisiana Workmen's Compensation Law, LSA-R.S. 23:1021 et seq., arising from the death of her father (the mother herself having been divorced and remarried, and therefore entitled to no compensation), the mother was appointed tutrix for the minor child by a Louisiana court. Appellants contend that the present suit should have been brought by said tutrix, instead of by a next friend, and that such suit could not be instituted without leave of the Louisiana court, which was not obtained.

The contention is without merit. This suit was commenced by Patricia Ann Diamond, a minor, "by her mother and next friend." Mississippi, where the cause of action arose and where this suit was instituted, is a common law state in which a minor may sue by a next friend. Prudential Ins. Co. v. Gleason, 185 Miss. 243, 187 So. 229; Hurt v. Southern R. R. Co., 40 Miss. 391; Brabham v. State, 5 Cir., 96 F.2d 210. The Mississippi wrongful death statute, Miss.Code, 1942, sec. 1453, pro-

vides that an action for wrongful death may be brought "in the name of a child for the death of a parent". We are unable to see how the matter could be governed by the laws of Louisiana, nor how leave of the Louisiana court is necessary to sue by a next friend in Mississippi when the right exists by Mississippi law. Federal Civil Rule 17(c), 28 U.S.C.A., relied on by appellants, provides that when a representative, such as a general guardian, has been appointed for an infant, the representative "may" sue or defend on behalf of the infant. But the rule is permissive, not mandatory. The matter is of no practical consequence because the Louisiana tutrix and the Mississippi next friend are the same person, the minor's mother.[1] Neither the question of liability nor the measure of damages would be affected by whether the suit were brought by the Louisiana tutrix or by the Mississippi next friend.

■■■ In its decree awarding the minor child compensation under the laws of Louisiana, the Louisiana court provided, *inter alia*, "It is further ordered, adjudged and decreed, that the rights of defendants, Brown's Velvet Ice Cream, Inc. (deceased's employer), and/or New Amsterdam Casualty Company (its insurance carrier) are hereby reserved to claim credit for the amount of compensation and funeral and contingent expenses paid hereunder (in Louisiana) in the event a judgment is obtained by plaintiff in the suit for damages for the death of Carmen D. Diamond, filed in the United States District Court, for the Southern District of Mississippi," etc., —this suit.

The trial judge in the final judgment entered herein provided that the insurance carrier should have protection as decreed by the Louisiana court out of the recovery by the plaintiff in this suit. Appellants complain of this provision in the final judgment.

We are unable to see how the defendants below are in any wise prejudiced by this provision. That is a matter entirely

---

1. Six days after verdict, the mother was also appointed guardian in Mississippi and was permitted to then intervene as such.

between the plaintiffs below and the intervenor, the New Amsterdam Casualty Company, with which the defendants are not concerned.

Finding no reversible error, the judgment is

Affirmed.