396 So.2d 31 (1981)
Walter KNIGHT
v.
Katie Ruth MOORE.
No. 52393.
Supreme Court of Mississippi.
April 1, 1981.
*32 Forrest A. Johnson, Jr., Johnson & Johnson, Natchez, for appellant.
David W. Hall, Natchez, for appellee.
Before SMITH, LEE and HAWKINS, JJ.
SMITH, Presiding Justice, for the Court:
Katie Ruth Moore, a thirty-nine year old woman, brought suit in the Chancery Court of Adams County on the 13th day of September, 1978, against Walter Knight, alleging that she was his natural daughter, born out of wedlock, and demanding that she be declared his heir, capable of inheriting from him under the Mississippi laws of descent and distribution. From an adverse decree, this appeal is prosecuted on behalf of Walter Knight by his guardian.
Walter Knight had become mentally incompetent prior to 1975, and in that year he was placed in the Mississippi hospital for the insane at Whitfield, where he remains. It is admitted that, because of his mental condition, he is unable to recognize Katie Ruth Moore or anyone else and is now hopelessly insane. The present suit was defended on behalf of Walter Knight by a court appointed guardian.
Katie Ruth Moore, who reached her majority some eighteen years prior to the filing of the present suit, and her present husband, testified that from earliest childhood and throughout her life Katie Ruth Moore and Walter Knight had maintained a daughter-father relationship, that she called him "daddy" and he called her "daughter." Moreover, they testified, he "gave her away" as his daughter at both of her marriages. Upon this and other like testimony, the chancellor found that Katie Ruth Moore was the natural daughter of Walter Knight, product of an illicit relationship between him and her mother, and that Walter Knight had acknowledged Katie Ruth Moore as his daughter. He held, moreover, that Mississippi Code Annotated sections 91-1-15 and 93-9-29(5) (1972) unconstitutionally discriminated against illegitimates and, consequently, were invalid and entered a decree for Katie Ruth Moore.
There is no question, from her own testimony, that all of the facts and circumstances relied upon to establish heirship were well and thoroughly known to Katie Ruth Moore throughout her minority and the eighteen years which elapsed between the time she became twenty-one years of age and before she brought the present suit.
The suit is based upon a charge that Mississippi Code Annotated sections 91-1-15 and 93-9-29(5) (1972) unconstitutionally discriminate against illegitimates. In support of this view Katie Ruth Moore cites Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).
Trimble, supra, involved the constitutionality of an Illinois statute which contained a dual requirement for inheritance by an illegitimate child from his father. The statute required that the child be acknowledged by *33 the father during his lifetime and legitimated by the subsequent marriage of the parents.
The Court began its analysis by stating that the statute would be held constitutional if it was substantially related to a permissible state interest. Two state interests were advanced by proponents of the statute: the promotion of legitimate family relationships and the efficient disposal of an intestate decedent's property.
The Court recognized that the orderly disposition of intestate property was the stronger state interest stating that the statute bore "only the most attenuated relationship" to promoting legitimate family relationships. Id. at 768, 97 S.Ct. at 1464, 52 L.Ed.2d at 38.
The Court concluded that the Illinois statute was unconstitutional on equal protection grounds because the dual requirements eliminated a significant category of illegitimate children whose inheritance rights could be recognized without jeopardizing the orderly disposition of intestate property.
At the time of the conception of Katie Ruth Moore by her mother, thirty-nine years before the present suit was brought, Walter Knight was married to one Marguerite Perry Knight and continued married to her until her death on June 24, 1978. For that reason, and because of his mental incompetency, he was incapable of entering into a valid marriage with Katie Ruth Moore's mother.
In Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), the United States Supreme Court determined that New York's statute on inheritance by illegitimates was constitutional. The New York statute contained no marriage requirement. Instead the statute required that the paternity of the father be declared in a judicial proceeding sometime before the father's death in order for the illegitimate to inherit from his father. The Court found that the interest served by the statute  the just and orderly disposition of property at death  was a valid state interest and that the New York statute rationally promoted that interest.
It has been suggested that the legislative purpose in the enactment of the above Mississippi statutes was to discourage intercourse between the sexes outside of marriage. We cannot attribute to the Legislature a purpose of such obvious naivete. There are two recognized legitimate state interests which the statutes are designed to protect: the promotion of legitimate family relationships and the just and orderly disposal of an intestate decedent's property.
In view of the conclusion we have reached, however, it is not necessary in this case to pass upon the constitutionality of the Mississippi statutes. No case has been cited, and we find none, where, the facts were directly on all-fours with the facts here. We believe that the reasoning of the United States Fifth Circuit Court of Appeals in Franklin v. City of Marks, 439 F.2d 665 (1971), in dealing with alleged unconstitutional discrimination presents a closely analogous situation. In that case the Court said:
We know, however, that when a municipality provides inadequate services to residents "on the other side of the tracks" that this deprivation constitutes unlawful discrimination. Hawkins v. Town of Shaw, Mississippi, 5 Cir.1970, 437 F.2d 1286. Here the plaintiffs were residents of the City of Marks at the time of the de-annexation proceeding. Undoubtedly, the Town of Shaw could not escape its federal constitutional and statutory obligations by a de-annexation proceeding. We know too that a change in location of polling places as a result of changes in municipal boundaries by annexation may have discriminatory purposes and effects and require federal scrutiny under the 1965 Voting Rights Act. Perkins v. Mathews, 1970, 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476. What might be regarded as a routine municipal ordinance or proceeding in state law is therefore subjected to thorough analysis and examination in federal law when the effect of the ordinance or proceeding is to deprive citizens of their federally protected rights.

*34 Accepting the allegations of the complaint as true for purposes of the motion to dismiss and finding no analogue in state law, the court must resort to the state's catch-all statute of limitations. Mississippi Code, Section 722 states: "All actions for which no other period of limitation is prescribed shall be commenced within six years next after the cause of such action accrued, and not after." It is the limitation to be applied to actions not otherwise explicitly covered by a limitation.
We hold, therefore, that Section 722 of the Mississippi Code provides the appropriate limitation for this action. (439 F.2d at 670).
While the defenses of laches, estoppel and the statute of limitations were not expressly raised by Walter Knight's guardian, we think that all of these defenses are appropriate under the facts here.
Katie Ruth Moore, well aware of all of the facts and circumstances on which she now relies, waited, not until the actual death of Walter Knight, but for eighteen years after attaining her majority and until he was mentally dead, utterly incapable of defending himself and unable to dispose of his property by will or deed.
The failure of the guardian to interpose these defenses cannot be visited upon the incompetent.
In Prudential Insurance Co. v. Gleason, 185 Miss. 243, 187 So. 229 (1939), this Court defined a guardian as follows:
A guardian, as the name implies, is a person appointed by the court to guard the interests of another person who, by reason of infancy, lunacy, or the like, is incapable of guarding his own interests without aid.
(Id. at 271, 187 So. at 232).
In Price v. Crone, 44 Miss. 571 (1871), this Court spoke of the chancellor's duty with respect to litigation involving a guardian and ward.
It is the duty of the chancellor to protect the rights of minors, whether the proper defense has been made or not. The pro forma answer of the guardian ad litem, "submits the interest of the infant to the care and protection of the court." Nothing is taken for confessed or waived by the minor or her guardian. The court must look to the record and all its parts, to see that a case is made which will warrant a decree to bind and conclude her interest, and of its own motion, give to the minor the benefit of all objections and exceptions, as fully as if specially made in pleading. (Emphasis added).
(Id. at 576).
The same principle applies in cases involving guardians of mental incompetents.
In 44 C.J.S., Insane Persons, § 148b (1945) appears the following statement:
Even in the absence of statute, the policy of the courts being to protect amply the rights of insane litigants, the failure to file a proper answer in behalf of an insane person is not necessarily fatal, and, where there is a formal defect in the pleading of the committee, the court should find the facts according to the proof as shown by the record.
Also, in 44 C.J.S., Insane Persons, § 144 (1945) the rule is stated thus:
No one may waive or admit away any substantial rights of, or consent to anything which may be prejudicial to, an insane litigant, and this rule embraces a general committee or guardian.
Mississippi Code Annotated section 9-5-83 (1972) provides:
The court in which a will may have been admitted to probate, letters of administration granted, or a guardian may have been appointed, shall have jurisdiction to hear and determine all questions in relation to the execution of the trust of the executor, administrator, guardian, or other officer appointed for the administration and management of the estate, and all demands against it by heirs at law, distributees, devisees, legatees, wards, creditors, or others; ... .
The Court finds that the present suit became barred by the six year statute of *35 limitations set forth in Mississippi Code Annotated section 15-1-49 (1972), six years after Katie Ruth Moore became twenty-one years of age, and should be dismissed. We raise the defense of the statute of limitations on our own motion, based upon the plain and undisputed facts in the record, and dismiss the suit, holding that the appropriate statute of limitations barring the action is that set forth in section 15-1-49 supra, [section 722, Mississippi Code (1942)].
REVERSED AND DISMISSED.
PATTERSON, C.J., ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.