797 So.2d 209 (2001)
J.C., S.C., Individually, and as Next Friend of K.C., a Minor
v.
In the Matter of the ADOPTION OF the MINOR CHILD NAMED HEREIN: R.Y. and L.Y.
No. 1999-CA-01801-SCT.
Supreme Court of Mississippi.
March 1, 2001.
*210 Jerry P. `Jay' Hughes, Jr., Oxford, for Appellants.
James E. Welch, Jr., Oxford, for Appellees.
EN BANC.
WALLER, Justice, for the Court:

STATEMENT OF THE CASE
¶ 1. Appellants J.C. and S.C. (the Carrolls) adopted the minor child K.C. (Katherine). Later, Appellees R.Y. and L.Y. (the Youngs) adopted Katherine.[1] The *211 Chancery Court of Marshall County, Mississippi, denied the Carrolls' claim that the second adoption should be voided on the ground that they had not consented thereto. The Carrolls then attempted to have the second adoption voided on the ground that the chancellor failed to appoint a guardian ad litem to represent Katherine. The chancellor ruled that, in view of the express language of Miss.Code Ann. § 93-17-8 (1994), the failure to appoint a guardian ad litem was not fatal to the adoption decree. The chancellor also held that the Carrolls' guardian ad litem claim was barred by the doctrine of res judicata. This appeal arises from the dismissal of the Carrolls' guardian ad litem claim. We find no reversible error and affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY
¶ 2. The Carrolls were granted custody of Katherine by the natural parents and then were granted a final adoption decree. This adoption is not at issue in the present appeal. The Carrolls allege that, once they brought Katherine into their home, her asthma was exacerbated by the environmental conditions there. They therefore agreed to allow Katherine to stay with the Youngs until they made changes at home to accommodate her condition.
¶ 3. The Youngs filed a petition seeking full custody of and parental rights over Katherine.[2] The chancery court granted full custody of the child to the Youngs and visitation rights to the Carrolls. No appeal was prosecuted from this decree.
¶ 4. Later, the Youngs asked the court to either terminate or restrict the Carrolls' visitation rights. The Carrolls responded by filing a motion for contempt and asking the court to set aside the adoption on the basis that their consent to the adoption was legally insufficient. They argued that, to their surprise and due to the Youngs' misrepresentations, the temporary custody agreement turned out to be a consent to an adoption proceeding. The Carrolls state in their briefs to this Court that they were encouraged to sign a blank notary block which apparently was attached to a consent and waiver of process form. On February 9, 1998, after a hearing, the chancery court upheld the adoption and terminated all of the Carrolls' visitation rights. No appeal from this decree was prosecuted.
¶ 5. Sixteen months later, the Carrolls, individually, and on the behalf of Katherine, filed a petition to declare the adoption void on the basis that the chancellor failed to appoint a guardian ad litem. On October 22, 1999, the chancellor rendered a final judgment, concluding that, pursuant to Miss.Code Ann. § 93-17-8 (1994), this being an uncontested adoption, there was no requirement for the court to appoint a guardian ad litem. The chancellor further found that the doctrine of res judicata operated to bar the Carrolls from once again attacking the adoption's validity. Feeling aggrieved, the Carrolls appeal to this Court, assigning essentially two points of error for review.[3]

STANDARD OF REVIEW
¶ 6. Both issues present questions of law. For questions of law, this Court's standard of review is de novo. Harrison *212 County v. City of Gulfport, 557 So.2d 780, 784 (Miss.1990).

DISCUSSION

I. WHETHER THE CHANCELLOR COMMITTED REVERSIBLE ERROR IN FINDING THE DOCTRINE OF RES JUDICATA TO HAVE PRECLUDED RELITIGATION OF THE SUBJECT ADOPTION.
¶ 7. Generally, four identities must be present before the doctrine of res judicata will be applicable: (1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made. Mississippi Employment Sec. Comm'n v. Georgia-Pacific Corp., 394 So.2d 299, 301 (Miss.1981); Cowan v. Gulf City Fisheries, Inc., 381 So.2d 158, 162 (Miss.1980); Standard Oil Co. v. Howell, 360 So.2d 1200, 1202 (Miss.1978). If these four identities are present, the parties are prevented from relitigating all issues tried in the prior lawsuit, as well as all matters which should have been litigated and decided in the prior suit. Pray v. Hewitt, 254 Miss. 20, 24-25, 179 So.2d 842, 844 (1965). In other words, "the doctrine of res judicata bars litigation in a second lawsuit on the same cause of action `of all grounds for, or defenses to, recovery that were available to the parties [in the first action], regardless of whether they were asserted or determined in the prior proceeding.'" Key v. Wise, 629 F.2d 1049, 1063 (5th Cir.1980) (quoting Brown v. Felsen, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979)). Res judicata applies in this case because both the insufficient consent action and the guardian ad litem action concerned claims attacking the adoption's validity. The Carrolls could have and should have raised the guardian ad litem claim when they first raised the insufficient consent claim.
¶ 8. The Carrolls seek to avoid the preclusive effect of res judicata by arguing that it is now the minor, Katherine, who is challenging the adoption. However, the Carrolls never appealed the adoption decree or the order denying their insufficient consent claim. Because the adoption decree terminated their parental rights, the Carrolls have no standing to assert a collateral attack of the adoption. As such, the action leading to the February 9, 1998, decree and the action leading to the October 22, 1999, judgment concerned the same parties. Accordingly, the action which led to the latter judgment was barred by the earlier decree. There was no error in the chancellor's finding res judicata applicable.

II. WHETHER THE CHANCELLOR ERRED IN FAILING TO APPOINT A GUARDIAN AD LITEM TO REPRESENT THE CHILD SO AS TO RENDER THE SUBJECT ADOPTION VOID.
¶ 9. Had the doctrine of res judicata been inapplicable in this case, the Carrolls' substantive argument nevertheless fails to prove reversible error.
¶ 10. The Carrolls argue that the chancellor's failure to appoint a guardian ad litem to protect the interest of the child in the subject adoptionwhich necessarily resulted in a termination of their parental rightsrenders the adoption void. They support this assertion by citing Miss.Code Ann. § 93-15-107(1) (Supp.2000), which requires a guardian ad litem to be appointed in an action to terminate parental rights. That statute states:
(1) In action to terminate parental rights, the mother of the child, the *213 legal father of the child, and the putative father of the child, when known, shall be parties defendant. A guardian ad litem shall be appointed to protect the interest of the child in the termination of parental rights. A child may be made party plaintiff, and any agency holding custody of a minor shall act as party plaintiff.
Id.
¶ 11. The Youngs assert that this case is one primarily involving an uncontested adoption proceeding and since Miss.Code Ann. § 93-17-8 (Supp.2000) does not require a guardian ad litem to be appointed to protect the interest of the child in such cases, the subject adoption is valid. That statute states, in pertinent part:
(1) Whenever an adoption becomes a contested matter, whether after a hearing on a petition for determination of rights under Section 93-17-6 or otherwise, the court:
* * *
(b) Shall appoint a guardian ad litem to represent the child. Such guardian ad litem shall be an attorney, however his duties are as guardian ad litem and not as attorney for the child. The reasonable costs of the guardian ad litem shall be taxed as costs of court. Neither the child nor anyone purporting to act on his behalf may waive the appointment of a guardian ad litem.
* * *
(5) Appointment of a guardian ad litem is not required in any proceeding under this chapter except as provided in subsection (1)(b) above and except for the guardian ad litem to be appointed where the chancery judge presiding in the adoption proceedings deems it unnecessary and no adoption agency is involved in the proceeding. No final decree of adoption heretofore granted shall be set aside or modified because a guardian ad litem was not appointed unless as the result of a direct appeal not now barred.
Id. § 93-17-8(1)(b) & (5).
¶ 12. In their brief to this Court, the Carrolls disagree that the adoption was uncontested.[4] However, the chancellor, in the "Judgment of Adoption and Other Relief," specifically stated that the Carrolls had joined in the petition for adoption for the purpose of giving their assent. No appeal from that ruling was prosecuted. And some sixteen months later when the Carrolls filed a "Motion for Contempt and Counterclaim to Set Aside Judgment of Adoption" for lack of sufficient consent to the adoption, the chancellor denied the motion. In so doing, he cited to the following authorities: Miss.Code Ann. § § 93-17-5, 93-17-7, 93-17-15, Rule 60(b) Miss. R. Civ. Pro., and Grafe v. Olds, 556 So.2d 690 (Miss.1990). No appeal from that ruling was prosecuted. As such, this Court is bound by the chancellor's apparent finding that the adoption was indeed consensual. Therefore, the adoption proceedings below must be viewed as having been uncontested.[5]
¶ 13. Perhaps most significant is this Court's holding in Grafe, where the majority held that the written, voluntary consent by a natural parent terminates their parental rights and thereafter, no objection to the adoption from the parent may be sustained. Grafe, 556 So.2d at 690-96; see also Miss.Code Ann. §§ 93-17-7 & 93-15-103(2) (1994). This authority apparently *214 bars the Carrolls' claim. Notwithstanding the preclusive effect the consent has on their claim, the issue of the necessity for appointment of a guardian ad litem in such proceedings as occurred below is of great importance and is addressed by the Court.
¶ 14. Thus the question presented is whether our statutory scheme requires the chancellor to appoint a guardian ad litem to protect the interest of the child in an uncontested adoption proceeding which necessarily involves the termination of parental rights. Because there is no easily derived answer to this issue, a review of this Court's jurisprudence on the necessity of the appointment of a guardian ad litem in adoption and termination of parental rights cases is in order.
¶ 15. In Luttrell v. Kneisly, 427 So.2d 1384 (Miss.1983), the Kneislys petitioned the trial court for the termination of the parental rights of the Luttrells as to Marie Luttrell, the Kneislys' foster child. The Kneislys also sought to adopt the child upon their termination of the natural parents' rights. The Luttrells contested the proceedings. The chancellor found that the Luttrells had abandoned Marie and were unfit to have her back. The Luttrells' parental rights were terminated, and an adoption decree entered in favor of the Kneislys. In reversing the trial court, this Court found that the chancellor erred in failing to appoint a guardian ad litem, as is required in a termination of parental rights case. In interpreting § 93-15-107(1), the Court stated, "The statute, as written, is clear and unambiguous. It unequivocally mandates that a guardian ad litem be appointed to protect the interest of a child in a termination of parental rights proceeding. The statute is clearly mandatory and not permissive." Luttrell, 427 So.2d at 1387.
¶ 16. In In re R.D., 658 So.2d 1378 (Miss.1995), the Department of Human Services filed a petition alleging that the minors were neglected by their mother. The chancellor adjudicated the children as neglected and removed them from the mother's custody. The mother then filed numerous petitions attempting to have custody of the minors restored to her. Her final petition to restore custody was granted. The DHS appealed. On appeal, this Court, noting Miss.Code Ann. § 43-21-121(1)(e) (1993), which requires a guardian ad litem to be appointed in every case involving an abused or neglected child which results in a judicial proceeding, reversed and remanded in part the lower court's decision due to the chancellor's failure to appoint a guardian ad litem. The Court stated:
This entire process appears to be a mere oversight by the chancellors [two were chancellors involved]. Nonetheless, the children's due process rights to representation cannot and will not be ignored by this Court. Whether requested or not, judges have the obligation to appoint a guardian ad litem to represent every minor alleged to be abused or neglected as the statute requires.
In re R.D., 658 So.2d at 1384.
¶ 17. In E.M.C. v. S.V.M., 695 So.2d 576 (Miss.1997), the mother and her new husband filed a complaint for adoption of the child by the husband. The father challenged the jurisdiction of the court and requested dismissal. The court found that it had jurisdiction, the father had abandoned the child, abandonment justified termination of his parental rights, and it was in the child's best interest to be adopted by the stepfather. The Court of Appeals affirmed. On grant of certiorari, this Court, citing § 93-15-107, held that the appointment of a guardian ad litem was mandatory as the adoption required the termination of the natural father's parental rights, and that failure to make such appointment *215 was reversible error. In re R.D., 658 So.2d at 1384.
¶ 18. Unlike the cases above, the instant case is one where the adoption proceeding below must be viewed as being uncontested. The Carrolls' consent to the adoption necessarily entailed a consent to the termination of their parental rights. And although a termination of parental rights necessarily evolved from the action, the nucleus of the case involved an uncontested adoption. As such, the more specific statute controlling this case is § 93-17-8(5). That statute limits the occasions where the appointment of a guardian ad litem is required in an adoption proceeding to contested allegations and where an adoption agency is involved. Neither of those scenarios is present here. Although this Court may think it better to appoint a guardian ad litem in uncontested adoption proceedings, the Legislature has exercised its prerogative and spoken otherwise.
¶ 19. The Carrolls argue that § 93-17-8(5) violates Katherine's right to due process by limiting the child's right to representation in adoption proceedings to those aforementioned situations. Although not explicitly stated in this Court's prior cases concerning a guardian ad litem's representation of a child in an adoption or termination matter, the due process which must be afforded that child appears to be one of procedural due process, as opposed to substantive due process. Indeed, in In re R.D., the Court found there to be a violation of the children's due process rights not to have been represented by a guardian ad litem solely because the statute required every minor alleged to be abused or neglected to be represented by a guardian ad litem. In re R.D., 658 So.2d at 1385. This Court has never found a child to have a "fundamental liberty interest" in having a guardian ad litem represent the child in an adoption or termination proceeding, as to render it a substantive due process right. As stated before, in Mississippi, adoption proceedings are purely statutory. In re Adoption of a Minor, 558 So.2d 854, 855 (Miss.1990).
¶ 20. While it may have been most preferable for the chancellor to have appointed a guardian ad litem in this caseespecially in hindsight of the accusations of misrepresentation this Court cannot find error in the chancellor's failure to do so where the statute specifically exempts such appointment in an uncontested adoption proceeding.

CONCLUSION
¶ 21. This Court concludes that the chancellor's failure to appoint a guardian ad litem was not fatal to the adoption decree. And that in any event, the doctrine of res judicata precluded relitigation of the validity of the adoption. The judgment of the Chancery Court of Marshall County, Mississippi, is, therefore, affirmed.
¶ 22. AFFIRMED.
PITTMAN, C.J., SMITH, MILLS, DIAZ and EASLEY, JJ., concur.
BANKS, P.J., dissents with separate written opinion joined by McRAE, P.J.
COBB, J., not participating.
BANKS, Presiding Justice, dissenting:
¶ 23. I disagree with the majority to the extent that it holds that the prior action by the natural parents is res judicata as to an action by the child.
¶ 24. This Court adheres to the view that rights of the child are separate and apart from those of the parent such that litigation by the parent, where the child is not joined as a party, has no preclusive effect on the later assertion of rights on behalf of the child. Baker v. Williams, 503 So.2d 249, 254 (Miss.1987). That view *216 is shared by most of our sister jurisdictions. "The generally prevailing view is that the parent-child relationship does not establish privity, and the child is therefore not bound by a judgment against the parent. Note, Privity, Preclusion and the Parent-Child Relationship, 1977 B.Y.U.L. Rev. 612, 621 (1977)." Commonwealth v. Johnson, 7 Va.App. 614, 376 S.E.2d 787, 790 (1989).
¶ 25. The question then arises as to whether the child can be considered a party to the adoption proceedings. The record reflects that the child was never made party and was not represented by a guardian ad litem. I must conclude that the child was not a party.
¶ 26. Having concluded that the child was not a party to the adoption proceedings and, therefore, not precluded by the judgment rendered therein, we must address the question of whether the child has asserted a claim in these proceedings which would prevent its dismissal. Rule 17(c) of the Mississippi Rules of Civil Procedure provides that an infant who "does not have a duly appointed representative may sue by his next friend." The term "next friend" as used in our rules is extremely broad, the only restriction apparently being that the next friend is an adult. Prudential Ins. Co. v. Gleason, 185 Miss. 243, 187 So. 229 (1939). In other jurisdictions, it embraces any person who is an adult who has the best interest of the child at heart and a "significant relationship" with the child. T.W. v. Brophy, 954 F.Supp., 1306 (E.D.Wis.1996), affirmed as modified, 124 F.3d 893 (7th Cir.1997). In addition to parents and other blood relatives, teachers, attorneys, child welfare workers and the like have been held to meet the criteria, Ad Hoc Comm. of Concerned Teachers v. Greenburgh No. 11 Union Free Sch. Dist., 873 F.2d 25 (2d Cir. 1989); Thomas v. New York City, 814 F.Supp. 1139 (E.D.N.Y.1993); In re Air Crash Disaster Near Saigon, South Vietnam on April 4, 1975, 476 F.Supp. 521 (D.D.C.1979), as a "next friend" is not a party to an action, but is an officer of the court, especially appearing to look after the interests of the minor whom he represents. Youngblood v. Taylor, 89 So.2d 503, 505 (Fla.1956).
¶ 27. In the instant case, the purported next friend is an adoptive parent whose parental rights have been terminated. It is the termination proceeding which is at issue. While the claim the next friend's claim to the same end has been adjudicated, the child's claim has not. Moreover, the child was not a party nor represented by a guardian ad litem in the prior proceedings. It may very well be that these proceedings are not in the best interest of the child. The child's rights are being asserted, however, and the court has the necessary tools to see that those rights are not given short shrift. In my view, this case should be remanded to the trial court for appointment of a guardian ad litem and a fresh determination whether this litigation is in the best interest of the child. While S.C. meets the criteria for next friend as an initial matter, the court surely has the power to replace her with a guardian ad litem with the power to direct the litigation, including a voluntary dismissal thereof should it be determined that the litigation is not in the child's best interest.
McRAE, P.J., joins this opinion.
NOTES
[1] Because it is confusing to refer to the parties by initials, we will refer to the parties by fictitious names: K.C. will be referred to as "Katherine"; J.C. and S.C. will be referred to as "the Carrolls"; and R.Y. and L.Y. as "the Youngs." Also, "the first adoption" refers to the adoption of K.C. by J.C. and S.C., and "the second adoption" refers to the adoption of K.C. by R.Y. and L.Y.
[2] The record does not contain the Youngs' petition to adopt Katherine.
[3] For the purposes of clarity and efficient discussion, the Carrolls' assignments of error are combined and rephrased.
[4] The record is devoid of the Carrolls' consent and waiver of process form.
[5] The DHS was not a party to the proceedings.