447 So.2d 1278 (1984)
In the MATTER OF the ESTATE of Earl B. KIMBLE, Deceased.
Darlene LARSEN
v.
Mable L. KIMBLE.
Nos. 54054, 54055.
Supreme Court of Mississippi.
March 7, 1984.
Rehearing Denied April 18, 1984.
Joe Jack Hurst, James S. Armstrong, Wells, Wells, Marble & Hurst, Jackson, for appellant.
E.R. Arrington, Arrington & Arrington, Hazlehurst, for appellee.
EN BANC.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Chancery Court of Copiah County wherein the chancellor sustained a motion to dismiss two separate petitions of Darlene Larsen prior to an evidentiary hearing, on the merits of those petitions. On October 20, 1981, Darlene Larsen, the appellant, filed two petitions in the Chancery Court of Copiah County. The first was a petition to determine the heirs of Earl B. Kimble; the second, a petition to reopen the estate of Earl B. Kimble. Larsen's petitions alleged that her mother was Earl Irene Stuart Kimble, the illegitimate daughter of Edith Stuart and Earl B. Kimble. Edith Stuart and Earl B. Kimble were never married. Earl B. Kimble subsequently married Mable Little Kimble, the appellee, on August 30, 1932. Earl Irene Stuart Kimble died in Nevada on September 9, 1976. Earl B. Kimble died on May 29, 1980, survived only by Mable Kimble, his widow, and Darlene Larsen, his alleged granddaughter. Following the consolidation and dismissal of her causes of action, Darlene Larsen now brings this appeal and assigns that dismissal as error. We reverse.
Earl B. Kimble's estate was opened in the Chancery Court of Copiah County on June 24, 1980, and closed on October 6, 1980. Mable Kimble was appointed the administratrix of the estate and all property therein was distributed to her. In her petition, Darlene Larsen alleged that as the daughter of Earl B. Kimble's illegitimate daughter, Earl Irene Stuart Kimble, she was entitled to share in his estate. Larsen first sought to prove the paternity of her mother, Earl Irene Stuart Kimble, and then assert a claim to Earl B. Kimble's estate through her mother.
*1279 There are two questions presented by this appeal: Whether the offspring of an illegitimate can sue to determine her heirship descending from the father of her illegitimate mother and if so, whether the instant suit was timely filed. Based on the following discussion of relevant authorities, we answer both questions in the affirmative.
In 1977, the United States Supreme Court handed down its decision in Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). This decision is of profound importance to illegitimates who wished to assert their right to inherit from intestate fathers. The Court there held that an Illinois statute which prohibited an illegitimate from inheriting from his intestate father unless the father had acknowledged the child and the child had been legitimated by marriage of the parents was an unconstitutional denial of equal protection. The Court noted that there may be problems associated with giving illegitimates an equal right to inherit from an intestate father. Among these problems were the difficulty of proving paternity and the associated danger of false claims against the estate. The Trimble decision stated that these problems "might justify more demanding standards for illegitimates claiming under their father's estates from that required either for illegitimate children claiming under their mother's estates or for legitimate children generally." Trimble, 430 U.S. at 770, 97 S.Ct. at 1459, 52 L.Ed.2d at 39.
The very next year (1978) in Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), the Supreme Court again addressed the right of illegitimates to inherit and the effect of a New York statute which required an adjudication of paternity prior to the death of the father. In Lalli, the Court held that New York's requirement that an order of filiation be made during the lifetime of the father had a rational relation to the state's interest in providing for the just and orderly disposition of property at death.
In 1981, our legislature responded to the constitutional mandate articulated in Trimble v. Gordon. At that time § 91-1-15 Miss. Code Ann. was rewritten to provide illegitimates with the right to inherit from an intestate father. Under the 1981 amendment an illegitimate could inherit from and through the illegitimate natural father and his kindred if one of three things happened: The natural parents participated in a marriage ceremony before the birth of the child; or there had been an adjudication of paternity or legitimacy before the death of the intestate; or there had been an adjudication of paternity after the death of the intestate if the action seeking the adjudication of paternity was filed within one year after the death of the intestate or within ninety (90) days after the first publication notice to creditors, whichever is less.[1] § 91-1-15(2) Miss. Code Ann. (Supp. 1981). For purposes of clarity we set out the entire 1981 amendment below:
SECTION 1. Section 91-1-15, Mississippi Code of 1972 is amended as follows:
91-1-15 (1) An illegitimate shall inherit from and through the illegitimate's mother and her kindred, and the mother of an illegitimate and her kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution. However, if an illegitimate shall die unmarried and without issue, and shall also predecease the natural father, the natural mother or her kindred shall not inherit any part of the natural father's estate from or through the illegitimate. In the event of the death of an illegitimate, unmarried and without issue, any part of the illegitimate's estate inherited from the natural father shall be *1280 inherited according to the statutes of descent and distribution.
(2) An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the natural father of an illegitimate and his kind shall inherit from and through the illegitimate according to the statutes of descent and distribution if:
(a) The natural parents participated in a marriage ceremony before the birth of the child, even though the marriage was subsequently declared null and void or dissolved by a court; or
(b) There has been an adjudication of paternity or legitimacy before the death of the intestate; or
(c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under Sections 91-1-27 and 91-1-29. However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less; and such time period shall run notwithstanding the minority of a child. No claim of inheritance based on an adjudication of paternity, after death of the intestate, by a court outside the State of Mississippi shall be recognized unless:
(i) Such court was in the state of residence of the intestate at the time of the intestate's death;
(ii) The action adjudicating paternity was filed within ninety (90) days after the death of the intestate;
(iii) All known heirs were made parties to the action; and
(iv) Paternity or legitimacy was established by clear and convincing evidence.
(d) The natural father of an illegitimate and his kindred shall not inherit;
(i) From or through the child unless the father has openly treated the child as his, and has not refused or neglected to support the child.
(ii) Any part of the natural mother's estate from or through the illegitimate if the illegitimate dies unmarried and without issue, and also predeceases the natural mother. In the event of the death of an illegitimate, unmarried and without issue, any part of the illegitimate's estate inherited from the mother shall be inherited according to the statutes of descent and distribution.
Any claim existing prior to July 1, 1981, concerning the estate of an intestate whose death occurred prior to such date by or on behalf of an illegitimate or an alleged illegitimate child to inherit from or through its natural father and any claim by a natural father to inherit from or through an illegitimate child shall be brought within three (3) years from and after July 1, 1981, and such time period shall run notwithstanding the minority of a child.
(3) The children of illegitimates and their descendants shall inherit from and through their mother and father according to the statutes of descent and distribution.

(Emphasis added).
In 1983, § 91-1-15 was again amended by our legislature. The 1983 amendment was not a substantive change in the statute, but rather, an attempt by the legislature to make certain that their intent be understood. That this was the purpose of the 1983 amendment becomes abundantly clear upon reading of the preamble to the 1983 amendment:
"WHEREAS, The Mississippi Legislature passed an act amending Section 91-1-15, Mississippi Code of 1972, and other sections of said code pertaining to the rights and claims of illegitimates, during the 1981 Regular Session, said amendment being effective from and after July 1, 1981; and
"WHEREAS, Section 91-1-15 was so amended to provide for intestate succession among an illegitimate and the natural father and his kindred with certain limitations, and to afford unto all illegitimates without classification a remedy *1281 whereby they could enforce their substantive rights and claims of intestate succession as provided for in said amendment; and
"WHEREAS, the Legislature recognized that the decisions and statutes of this state existing prior to said amendment placed an unsurmountable barrier to inheritance by illegitimates when compared to the rights of a legitimate person, and that said decisions and statutes effectively barred an unnecessarily large number of illegitimates from inheritance through their natural father as a result of certain classifications into which the illegitimate may be categorized in violation of equal protection under the law; and
"WHEREAS, it now appears that there is confusion as to the legislative intent in amending Section 91-1-15, Mississippi Code of 1972, and said section is now interpreted by some segments of the judiciary to mean that the Legislature did not intend to create a new, separate and distinct remedy for the benefit of all illegitimates without any classification and said amendment as now codified in Section 91-1-15, Mississippi Code of 1972, is interpreted by some segments of the judiciary to be prospective on rather than retrospective and prospective in effect and is interpreted not to have created a new, separate and distinct remedy for the claims of all illegitimates without classification; and
"WHEREAS, the Legislature recognized at the time it was considering said amendment, that by creating said remedy the Legislature was opending the door to the possible litigation of stale or fraudulent claims and that a further effect of bestowing said remedy upon all illegitimates would possibly be to create a certain amount of confusion and uncertainty as to the status of titles to real property; however, the Legislature intended to bestow upon illegitimates a new and additional remedy whereby such illegitimates could maintain their rights of inheritance notwithstanding such interests of the state in preventing stale and fraudulent claims and avoiding uncertainty as to the titles of real property and, accordingly, the Legislature enacted appropriate periods of limitations within which illegitimates could bring their claims;

"NOW, THEREFORE, in order to eliminate any ambiguity in Section 91-1-15, Mississippi Code of 1972, and to conform said section to express the true legislative intent. BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MISSISSIPPI."
(Emphasis added)
The 1983 Amendment also included the following definitions:
(a) "Remedy" means the right of an illegitimate to commence and maintain a judicial proceeding to enforce a claim to inherit property from the estate of the natural mother or father of such illegitimate said claim having been heretofore prohibited by law, or prohibited by statutes requiring marriage between the natural parents, or restrained, or enjoined by the order of process of any court in this state.
(b) "Claim" means the right to assert a demand on behalf of an illegitimate to inherit property, either personal or real, from the estate of the natural mother or father of such illegitimate.
(c) "Illegitimate:" means a person who at the time of his birth was born to natural parents not married to each other and said person was not legitimized by subsequent marriage to said parents or legitimized through a proper judicial proceeding.
(d) "Natural parents" means the biological mother or father of the illegitimate.
Section 91-1-15(1) Miss. Code Ann. (Supp. 1983). (Emphasis added)
Perhaps the most significant aspect of this remedial statute is the fact that it created a remedy in favor of all illegitimates regardless of the date of the death of the intestate but placed in a three year *1282 limitation period, after July 1, 1981 notwithstanding the minority of a child (illegitimate) within which to file such claim. This was done by inclusion of subsection (3)(d)(ii) ¶ 2 which states as follows:
A remedy is hereby created in favor of all illegitimates having any claim existing prior to July 1, 1981, concerning the estate of an intestate whose death occurred prior to such date by or on behalf of an illegitimate or an alleged illegitimate child to inherit from or through its natural father and any claim by a natural father to inherit from or through an illegitimate child shall be brought within three (3) years from and after July 1, 1981, and such time period shall run notwithstanding the minority of a child.
The question now arises how does this code section apply to the issues presented in the instant case. Earl Irene Stuart Kimble could not have asserted a claim against Earl B. Kimble prior to July 1, 1981. This is true for two reasons. First and foremost, throughout the life of Earl Irene Stuart Kimble, Earl B. Kimble was alive. Because no person is an heir of another living person, Earl Irene Stuart Kimble had no claim to assert.
In Estate of Kidd v. Kidd, 435 So.2d 632 (Miss. 1983) we quoted the following passage from Covington v. Frank, 77 Miss. 606 at 618, 27 So. at 1000 (1900):
If to prove the status of Mary Covington and Cornielia Miller as to W.A. Covington be proof of a claim against the estate of W.A. Covington, certainly it is a claim that did not originate in the lifetime of W.A. Covington. It is undoubted law that a child, during the lifetime of the father, has no interest in his estate; it was held in the New Orleans Railway & Mill Supply Co. v. Gattie and wife, [77 Miss. 754, 27 So. 601] at this term, that a wife has no property interest in the homestead of the husband such as would constitute a consideration to support a promise from him to her. So neither wife nor child has any interest in the property of the husband and father during his lifetime; dying intestate they would be his heirs, and to prove their relationship to him is to prove their title to his property by desent when cast; but it is not to prove a claim that originated in his lifetime. At the death of a person, dying intestate, eo instanti the title of the heirs accrues. Jones v. Robinson, 17 Ohio St., 171, 180; 1 Redfield on Wills, 412, 413.
435 So.2d at 635.
Second, the remedy created by § 91-1-15 did not come into existence until July 1, 1981. Therefore, no cause of action existed prior to July 1, 1981. At that point § 91-1-15 created a remedy for all illegitimates and descendants of illegitimates. Subsection (3) of this statute provides that: "The children of illegitimates and their descendants shall inherit from and through their mother and father according to the statutes of descent and distribution." Therefore, the statute also created a cause of action for those descents of illegitimates who wished to assert a claim against their ancestor's estates. Such is just the case in the immediate suit. Although Earl Irene Stuart Kimble never had a cause of action, a remedy was created for the first time in favor of Darlene Larsen on July 1, 1981.
In Estate of Kidd v. Kidd, 435 So.2d 632 (Miss. 1983), we held: "A cause of action accrues only when it comes into existence as an enforceable claim; that is, when the right to sue becomes vested." See also, Rankin v. Mark, 238 Miss. 858, 120 So.2d 435 (1960); Aultman v. Kelly, 236 Miss. 1, 109 So.2d 344 (1959); Walley v. Hunt, 212 Miss. 294, 54 So.2d 393 (1951); Forman v. Mississippi Publishers Corp., 195 Miss. 90, 14 So.2d 344 (1943).
It is obvious then that Darlene Larsen had a remedy as of July 1, 1981, contingent upon her establishing that Earl B. Kimble was the father of her deceased illegitimate mother. We are now faced with our second inquiry. Was her cause of action timely filed? Section 91-1-15 contains two separate periods of limitation. The first appears in subsection (3)(c) wherein an adjudication of paternity after the *1283 death of the intestate is permitted if such action is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors, whichever is less. The second period of limitation is in subsection (3)(d)(ii) ¶ 2 wherein the legislature provided that any claims existing prior to July 1, 1981, concerning the estate of an intestate whose death occurred prior to such date (July 1, 1981) by or on behalf of an illegitimate or an alleged illegitimate child to inherit from or through its natural father to be brought within three years from date. As we interpret the legislative intent the three year period relates solely to those claims accruing to an illegitimate as a result of the death of an intestate prior to July 1, 1981. The one year or ninety (90) day period of limitation is therefore applied only to those cases where the intestate died subsequent to July 1, 1981. In the instant case, Earl B. Kimble died prior to July 1, 1981. Because that is so, Darlene Larsen had until June 30, 1984 in which to assert her claim as an heir to the estate of Earl B. Kimble. Clearly then, this suit was timely filed.
It has been said that the legislature has opened the door to stale or fraudulent claims by its amendment of § 91-1-15 effective July 1, 1981 and its clarification as to legislative intent in 1983. We do not so interpret the amendment. Instead we find that the amendment allows a shorter time period within which an illegitimate must file a claim than allowed in Knight v. Moore, 396 So.2d 31 (Miss. 1981). The amended section requires filing within one year after death of the intestate, if the intestate dies after July 1, 1981, and this limitation period is to run notwithstanding the minority of a child. Knight held that the claim must be filed within six (6) years after the illegitimate reached twenty-one (21) years of age. The amendment of § 91-1-15 in 1981 sets the one year limitation period to begin at the time of death of the intestate as it should. See Estate of Kidd v. Kidd, 435 So.2d 632 (Miss. 1983).
The standard of proof as clearly announced in the amendment requires that a determination of heirship be by clear and convincing as opposed to a preponderance of the evidence. By raising the standard of proof, the legislature surely was attempting to eliminate or reduce instances of false or fraudulent claims.
The 1981 amendment and the 1983 clarification thereof clearly eliminated the "unsurmountable" statutory barrier condemned in Trimble v. Gordon, supra, while at the same time shortened the limitation period within which to bring a claim and increased the standard of proof to sustain such a claim. In doing so we believe that the amendment in 1981 and clarification amendment in 1983 will effectively afford the illegitimates equal protection of the law, while at the same time accomplish the legitimate state interest of (1) avoiding the litigation of stale or fraudulent claims, (2) the fair and just disposal of an intestate decedent's property; and (3) the repose of titles to real property. Estate of Kidd v. Kidd, supra. Justice will thereby prevail wherein all may take comfort, legitimates and illegitimates alike, that they will be treated equally under the laws of the State of Mississippi.
Based on all of the foregoing, we hold that Darlene Larsen is entitled to a full hearing in an attempt to assert her claim to the estate of Earl B. Kimble and that her attempt to do so has been timely filed.
REVERSED AND REMANDED FOR A TRIAL NOT INCONSISTENT WITH THIS OPINION.
PATTERSON, C.J., and BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.
WALKER and ROY NOBLE LEE, P.JJ., dissent.
SULLIVAN, J., not participating.
NOTES
[1] It should be noted that our statute is much greater in scope than that approved by the Supreme Court in Lalli. Our statute permits an adjudication of paternity after the intestate's death whereas the New York statute did not. This is but one of the many indications that our legislature intended that the remedies provided by § 91-1-15 be broadly interpreted. The preamble to the 1983 amendment, quoted in full in this opinion, is also indicative of this point.