521 So.2d 863 (1988)
Rodney LEFLORE and Dacia Primer, Minors, By and Through Vera Leflore PRIMER, Their Guardian
v.
Stanley COLEMAN.
In the Matter of the ESTATE OF WILLIE J. Primer, Deceased: Rodney Leflore and Dacia Primer, Minors, By and Through Vera Leflore Primer, Their Guardian and Next Friend
v.
Willie Charles PRIMER and the Heirs At Law of Willie Primer, Deceased.
Nos. 56631, 56677.
Supreme Court of Mississippi.
February 24, 1988.
Robert M. Jones, Gilmer & Jones, Jackson, for appellant.
Mildred M. Morris, Steen, Reynolds, Dalehite & Currie, Jackson, James E. Smith, Smith & Smith, Carthage, for appellee.
EN BANC.
HAWKINS, Presiding Justice, for the Court:
Before us are the consolidated appeals of Rodney Leflore and Dacia Primer, purported illegitimate children of Willie Primer, *864 deceased intestate, from a decree of the chancery court of Leake County dismissing their claim of heirship, and the circuit court of Madison county dismissing their wrongful death action against Stanley Coleman (based upon the chancery court dismissal of their heirship claim).
The issue we address upon this appeal is whether the failure of these minors to assert any claim in the estate of the decedent until after expiration of 90 days from date of first publication of notice to creditors as required by Miss. Code Ann. § 91-1-15(3)(c) bars their claim and action. Because the sworn petition for letters of administration of Primer's estate specifically alleged they were natural children of the decedent (born out of wedlock), and because no effort was made by the administrator to secure process upon them as required by Miss. Code Ann. § 91-1-29, we find that failure to assert a claim in the 90-day period did not bar them, and reverse and remand for proceedings consistent with this opinion.

FACTS
Willie J. Primer, an adult resident of Leake County, was killed in Madison County on September 25, 1983, when the motorcycle he was operating and a GMC truck being driven by Stanley Coleman collided on Old Highway 16. During his lifetime Primer was married to Shirley Primer (later Shirley Primer Payne), and to this marriage one child was born: Willie Charles Primer. At the time of Primer's death, Mrs. Payne, his divorced wife, resided in Detroit, Michigan, with Willie Charles Primer. On October 31, 1983, Sally Ann Primer, the natural mother of Primer, and Mrs. Payne filed a sworn petition for letters of administration upon Primer's estate in the chancery court of Leake County which contained the following allegation:
4. That said decedent was first married to Shirley Primer Payne, but which marriage ended in divorce. To that union one child, Willie Charles Primer, was born. The said child is now 12 years of age and resides with his said mother in Michigan. That petitioner Sally Ann Primer is the mother of decedent. It is further shown that two other children were born to the union of decedent and one Vera Primer, whose address is also Route 7, Box 317, Carthage, Mississippi, said children being Rodney T. Wilder, age 8, Daysha S. Primer, age 7. It is shown, however, that decedent never consumated or contracted a legal marriage with Vera Primer and that although decedent acknowledged said issue as being his children, yet they were never adjudicated his legal children through adoption, paternity action or any other legal means as recognized by Mississippi law.
* * * * * *
6. Petitioner would show that it would be in the best interest of decedent's estate that the Court appoint Sally Ann Primer as administratrix thereof. In support of such contention it is shown that decedent expired not being survived by spouse and that his son, Willie Charles Primer, is disqualified due to his minority, and there are no other persons who stand in equal right except decedent's co-lateral heirs consisting of his parents and brothers and sisters. That because Sally Ann Primer was the mother of decedent and because she resides in Leake County and is not disqualified according to law, that she is in the best position to manage decedent's estate.
Cause No. 56,677, Vol. I, pp. 1-2.
The chancery court entered an order authorizing letters of administration to issue Sally Ann Primer on October 31, 1983.
In the November 3, 10 and 17, 1983, issues of THE CARTHAGINIAN, a weekly newspaper published in Leake County, the following notice to creditors was published:
NOTICE TO CREDITORS
In the Matter of the Estate of Willie J. Primer, deceased.
Sally Ann Primer, Administratrix
Civil Action File No. 11,087.
All persons holding claims against the Estate of Willie J. Primer, deceased, will appear before the Clerk of the Chancery Court of Leake County, Mississippi and *865 have same probated and registered by the Clerk of said Court within ninety (90) days after the date of the first publication of this notice.
Letters of Administration were granted to Sally Ann Primer by the Clerk of said Court on the 31st day of October, 1983.
All persons failing to probate and register their claims against said estate within ninety (90) days from the date of first publication of this Notice will be forever barred, and a suit shall not be maintained thereon in any court even though the existence of the claim may have been known to the administratrix.
This the 31 day of October, 1983.
(s) Sally Ann Primer
Cause No. 56,677, Vol. I, p. 13.
Also, on the 31st day of October, 1983, Sally Ann Primer filed a petition for authority to bring a suit for the wrongful death of Primer, pursuant to § 11-7-13 of the Mississippi Code (1972) in behalf of Willie Charles Primer. The chancery judge entered an order authorizing the filing of suit on November 14, 1983. The order recites that "the sole statutory heir of decedent is his son, Willie Charles Primer, a minor, who is 11 years of age."
On the 29th day of February 1984, Vera Leflore Primer filed a complaint in behalf of Rodney Leflore and Dacia Leflore in the chancery court of Leake County to determine their right to inherit. The complaint alleged that Rodney and Dacia were minor residents of Leake County and that Vera was an adult resident of Leake County. It named Willie Charles Primer and his mother Shirley Payne as defendants, and further alleged that the plaintiffs were unable to ascertain the name or post office address of any additional heirs to Willie Primer. The complaint also contained the following allegations:
II.
The Plaintiffs, Rodney Leflore and Dacia Primer, along with Defendant, Willie Charles Primer, are all children of Willie Primer and are also the sole heirs at law of Willie Primer, who died on or about September 25, 1983; and, said plaintiffs file this Complaint To Determine Right To Inherit pursuant to Miss. Code Ann. § 91-1-27, et seq. (1972).
III.
Plaintiffs have not instituted proceedings under the paternity laws of the State of Mississippi, or any other state, for the purpose of establishing the paternity of said Rodney Leflore and Dacia Primer, and enforcing the rights of Rodney Leflore and Dacia Primer to inherit under said law.
IV.
During the lifetime of Willie Primer, Willie Primer acknowledged Rodney Leflore and Dacia Primer, by his spoken words and actions, to be his son and his daughter, respectively.
V.
Upon his death, Willie Primer died intestate and had his principal residence in Leake County, Mississippi. That at the time of his death, Willie Primer died possessed of real and personal property in the State of Mississippi. Plaintiffs allege that they, along with Willie Charles Primer, are the sole heirs at law of Willie Primer and, by virtue of such heirship, Plaintiffs are entitled to share in the estate of Willie Primer, including but not limited to, the aforementioned property and any claims arising out of or relating to the death of Willie Primer.
WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Complaint be received, that process issue for the Defendant, Willie Charles Primer, and further, that summons by publication be made to the Clerk of this Court addressed "to the unknown heirs at law of Willie Primer, Deceased", commanding the Defendants, both known and unknown, to answer or plead otherwise according to law, and that upon a final hearing hereof, an order be entered recognizing Rodney Leflore and Dacia Primer as the children and heirs at law of Willie Primer, Deceased, and further *866 adjudicating Willie Primer to be the natural father of both Rodney Leflore and Dacia Primer.
Cause 56,677, Vol. I, pp. 15-16.
Process by publication was had upon Willie Charles Primer and his mother Shirley Payne on the 8th, 15th and 22nd days of March, 1984, in THE CARTHAGINIAN.
Among other things, the right to inherit by Rodney and Dacia was contested because no claim had been filed within 90 days from date of publication of the first notice to creditors. The special chancellor in his opinion stated the following:
The second defense contained in the guardian's answer is that Plaintiffs did not file their complaint to inherit within 90 days after the first publication of notice to creditors in this estate as provided by Miss. Code Ann., Sec. 91-1-5 (Supp. 1984) and thus plaintiffs are barred from proceeding. In this regard the court has been asked to take judicial notice of the court file. Further, independent facts stipulated at the hearing establish that the first notice to creditors was published on November 3, 1983, and the complaint to determine right to inherit was not filed until February 29, 1984. The fact that the plaintiffs are illegitimate is not in dispute. There is no doubt that more than 90 days elapsed between the first publication to creditors and the filing of the complaint. Thus by the terms of the statute, plaintiffs are barred from proceeding. Plaintiffs argued that the administrator's notice to creditors was ineffective to start the running of the statute of limitations because the order of the chancery clerk appointing the administrator was never approved by the Chancery Court as required by Miss. Code Ann., Sec. 95-147 (1972). Plaintiffs argue that each order of the clerk in this regard must be approved by a separate corresponding order signed by the judge and filed in the cause. A reading of the pertinent statutes do not bear this out. Applicable is not only Sec. 9-5-147 but also 9-5-141, 9-5-149, 9-5-151 and 9-5-153. A reading of all these statutes makes it clear that the vacation orders of the clerk when approved at the first term thereafter shall be as valid and effectual "as if done by court, when they were done by the clerk." See Miss. Code Ann., Sec. 9-5-151 (Supp. 1984). The statutes were here complied with. The clerk's order appointing the administrator was signed by the clerk on October 31, 1983. The next term of court held thereafter was the regular February 1984 term. At this term the court entered an order approving all of the orders of the clerk (which would include the one here in question) entered in vacation.
Plaintiffs in their brief ask this court to strike down the 90 day limitation of Section 91-1-15 as unconstitutional and particularly when applied to the Mississippi Wrongful Death Statute. The court is of the opinion that the statute is constitutional with reference to inheritance by illegitimates. See Lalli v. Lalli 439 U.S. 259 [99 S.Ct. 518, 58 L.Ed.2d 503] (1978). This court does not have before it the question of the constitutionality of the 90 day limitation of the statute as applied to an illegitimate's entitlement under the Wrongful Death Statute. The complaint seeks only a determination as to intestate succession. It does not seek determination of the statutory beneficiaries under the Wrongful Death Statute. It is the court's understanding that this latter issue is now before the Circuit Court of Madison County, Mississippi, where there is a pending suit to recover for the wrongful death of the father of the parties herein involved.
The complaint as amended should be dismissed.
Cause No. 56,677, Vol. I, pp. 101-102.

CAUSE NO. 56,631  THE CIRCUIT COURT SUIT
On February 1, 1984, Rodney Leflore and Dacia Primer, through Vera Leflore Primer, their guardian, filed suit in the circuit court of Madison County for the wrongful death of their father, Willie Primer. The complaint alleged suit was filed on behalf of all the heirs of Primer; and also alleged that Rodney and Dacia were the natural children of Primer's. In his answer Coleman *867 alleged as one of his defenses that plaintiffs were barred from bringing the action.
On May 1, 1984, Willie Charles, by and through Shirley Primer Payne, filed a motion to intervene as a plaintiff under Rule 24, Mississippi Rules of Civil Procedure. The motion alleged that Willie Charles was the only legitimate natural child born to the deceased, and that the plaintiffs were illegitimate children and had no standing to file suit.
On December 8, 1983, the chancery court of Leake County entered an order authorizing Vera Leflore Primer as guardian of Rodney and Dacia, to pursue a wrongful death action against Coleman. This order was entered in Cause No. 11,096, which was a guardianship proceeding, however, and not the original estate proceeding in the estate of Willie J. Primer, which was Cause No. 11,087 of the Leake County Chancery Court.
Coleman filed a motion for summary judgment against Rodney and Dacia on the grounds that their cause of action was barred. He supported said motion with the decree of the chancery court dismissing Rodney's and Dacia's claim to be heirs-at-law of Primer. On July 2, 1985, the circuit court of Madison County sustained the motion for summary judgment against these plaintiffs, and dismissed their suit.
Rodney and Dacia, by and through Vera Leflore Primer, have appealed both the final decree of the chancery court dismissing their claim to be heirs-at-law and the final judgment of the circuit court sustaining the motion for a summary judgment and dismissing their suit.

LAW

WERE RODNEY AND DACIA BARRED FROM CLAIMING AS HEIRS AND BRINGING A WRONGFUL DEATH ACTION?
To answer this question four different statutes must be read and examined together.
Miss. Code Ann. § 91-1-15 (1985 Supp.) reads in pertinent part as follows:
(3) An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if:
* * * * * *
(c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under Sections 91-1-27 and 91-1-29. However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less; and such time period shall run notwithstanding the minority of a child... .
By Section 6, Chapter 529, Laws of 1981, the Legislature amended Miss. Code Ann. § 11-7-13 in pertinent part as follows:
[T]he provisions of this section shall apply to illegitimate children on account of the death of the natural father and to the natural father on account of the death of the illegitimate child or children, and they shall have all the benefits, rights and remedies conferred by this section on legitimates, if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15.
Miss. Code Ann. § 91-1-27 in its entirety reads as follows:
§ 91-1-27. How title to property acquired by descent may be made.
In all cases in which persons have died, or may hereafter die, wholly or partially intestate having property, real or personal, any heir at law of such deceased person, or any one interested in any of the property as to which he shall have died intestate, may petition the chancery court of the county in which said deceased had his mansion house or principal place or residence, or in which any part of his real estate may be situated, in case he was a nonresident, setting forth the fact that said person died wholly or *868 partially intestate possessed of real or personal property in the State of Mississippi, the names of the heirs at law or next of kin, and praying that the person named in said petition be recognized and decreed to be the heir at law of said deceased.
Miss. Code Ann. § 91-1-29 in its entirety reads as follows:
§ 91-1-29. Heir to be cited to appear.
All the heirs at law and next of kin of said deceased who are not made parties complainant to the suit or petition, shall be cited to appear and answer the same. And in addition thereto a summons by publication shall be addressed to "the heirs at law of ____ deceased," and shall be published as other publications to absent or unknown defendants, and the cause shall be proceeded with as other causes in chancery, and upon satisfactory evidence as to death of said person and as to the fact that the parties to said suit are his sole heirs at law, the court shall enter a decree that the persons so described be recognized as the heirs at law of such a decedent, and as such be placed in possession of his estate. And said decree shall be evidence in all the courts of law and equity in this state that the persons therein named are the sole heirs of the person therein described as their ancestor.
It is now clear that the Legislature has declared as the public policy of this state that an illegitimate child can inherit from his natural father's estate, and share in the proceeds of a wrongful death action the same as a natural legitimate child. Miss. Code Ann. §§ 11-7-13, 91-1-15. In the same sections, however, there is a requirement that proper and timely steps be taken by the illegitimate as a condition precedent to inheriting from or sharing in a wrongful death action of the natural father. Miss. Code Ann. § 11-7-13 (1985 Supp.); § 91-1-15(3)(c) (1985 Supp.). There must be an adjudication of paternity in an heirship proceeding under Miss. Code Ann. §§ 91-1-27 and 91-1-29. Also, the illegitimate child must file an action within one year from date of death of the father, or within 90 days from date of first publication of notice to creditors. In this case Rodney and Dacia did not file their complaint until more than 90 days after date of first publication of notice to creditors (October 31, 1983  February 29, 1984). The question therefore, is whether failure to file within the 90-day period bars their claim.
In this case it did not. As we recently pointed out in Matter of Estate of Flowers, 493 So.2d 950 (Miss. 1986), and Estate of King, 501 So.2d 1120 (Miss. 1987), the mandatory compliance by an illegitimate with the provisions of Miss. Code Ann. § 91-1-15(3)(c) presupposes a good faith compliance by the administrator with the obligation imposed upon him by law to advise the court and secure process upon all heirs known to him. Miss. Code Ann. § 91-7-293; § 91-1-29. The law will not permit a totally unknown person to assert a claim without strictly adhering to this time requirement of asserting his claim in court, and in the manner as required by statute. Rita Ivy v. Illinois Central Gulf Railroad Co., et al., 510 So.2d 520 (Miss. 1987). Neither will the law permit a deliberate concealment by an administrator of a potential lawful heir. Thus, as we held in Estate of Flowers and Estate of King, supra, the time requirements of Miss. Code Ann. § 91-1-15(3)(c) are not applicable in a case of a deliberate failure to notify the potential heirs as required by Miss. Code Ann. § 91-1-27 or in a case of a deliberate concealment from the chancery court of the names of potential heirs, who are required to be named by Miss. Code Ann. § 91-7-293. Therefore, in Estate of Flowers and Estate of King, we held Miss. Code Ann. § 91-1-15(3)(c) did not bar a claim not filed within the 90-day period when an administrator deliberately failed to make an effort to see that all potential heirs were brought into court.
In this case there was no fraud or misrepresentation on the part of Sally Ann Primer, and Shirley Primer Payne when they petitioned the court for Mrs. Primer to be appointed administratrix, because the petition specifically named Rodney and Dacia *869 and stated they were in fact the natural children of Willie Primer. Mrs. Primer, as administratrix, however, should have complied with Miss. Code Ann. § 91-1-29 and had process issued upon Rodney and Dacia. Apparently counsel for the estate did not comply with this statute because he thought these illegitimate children had no legal interest in the estate.
In our view, the learned chancellor erred when he ruled that timely compliance with Miss. Code Ann. § 91-1-15(3)(c) was required in this case, as did the circuit judge. Since the administratrix knew of these illegitimate children, she should have given them notice of the issuance of letters of administration.
Rodney Leflore and Dacia Primer are entitled to share in the estate of their father and in any wrongful death settlement the same as legitimate children if there is no dispute that they are ;indeed his natural children. On the other hand, if there is any dispute as to this matter, the chancery court upon remand has authority to decide the issue and determine the question.
Reversed and remanded to the chancery court of Leake County and to the circuit court of Madison County for proceedings consistent with this opinion.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER,
ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
GRIFFIN, J., dissents.
GRIFFIN, Justice, dissenting:
I respectfully dissent.
Before this Court are the consolidated appeals of Rodney Leflore and Dacia Primer, purported illegitimate children of Willie J. Primer, deceased intestate, from the Madison County Circuit and Leake County Chancery Courts, the Honorable R.L. Goza and E.G. Cortright presiding, respectively. The decrees therein dismissed appellants' claim of heirship, and their action for wrongful death (based upon the chancery court dismissal of their heirship claim).
The basis for this appeal is the failure of these minors to assert any claim in the estate of the decedent until after expiration of the 90-day deadline as set forth under Miss. Code Ann. § 91-1-15(3)(c), which states in pertinent part:
(3) An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if:
* * * * * *
(c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under Sections 91-1-27 and 91-1-29. However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less; and such time period shall run notwithstanding the minority of the child... .
It is the position taken by appellees that failure to file notice of claim within the statutory time period bars the minors' claim of action. However, appellants aver that because the sworn petition for letters of administration of Primer's estate specifically named them as natural children of decedent, albeit illegitimate, and no apparent effort was made by the administrator to secure process upon them, their claim is not barred for failure to file within the requisite time. In support of their contention they cite Miss. Code Ann. § 91-1-29, which provides for notice to certain parties not made parties to the suit or petition.
Initially, it has been noted that this statute mandates that "all heirs at law and next of kin of said deceased who are not made parties complainant to the suit or petition shall be cited to appear and answer the same." (emphasis ours). Provision for unknown heirs to a decedent allows for notice by publication. Miss. Code Ann. *870 § 91-1-29 (1972). See also, Miss. Code Ann. § 13-3-25 (1972).
The opinion of the majority first states that the answer to the issue presented relies upon interpretation of four different statutes, including the one referred to above. The others necessary to fair adjudication, according to the earlier opinion, include: Miss. Code Ann. § 91-1-15 (1985 Supp.) (cited, supra). Miss. Code Ann. § 11-7-13 (1981 Supp.) is another of the four statutes, and it states, in pertinent part, as follows:
[T]he provisions of this section shall apply to illegitimate children on account of the death of the natural father and to the natural father on account of the death of the illegitimate child or children, and they shall have all the benefits, rights and remedies conferred by this section on legitimates, if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15.
Miss. Code Ann. § 91-1-27 (1972) is another of these statutes and it is as follows:
§ 91-1-27. How title to property acquired by descent may be made.
In all cases in which persons have died, or may hereafter die, wholly or partially intestate having property, real or personal, any heir at law of such deceased person, or any one interested in any of the property as to which he shall have died intestate, may petition the chancery court of the county in which said deceased had his mansion house or principal place of residence, or in which any part of his real estate may be situated, in case he was a nonresident, setting forth the fact that said person died wholly or partially intestate possessed of real or personal property in the State of Mississippi, the names of the heirs at law or next of kin, and praying that the person named in said petition be recognized and decreed to be the heir at law of said deceased.
While we would agree that all four statutes are necessary to final disposition of this cause of action, the majority misinterprets the plain language of statutes and thereby violates the legislative intent in formulation of the statutes.
In 1981, our legislature responded to the constitutional mandate articulated in Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) (discussed, infra). Matter of Estate of Kimble, 447 So.2d 1278, 1279 (Miss. 1984). At that time, § 91-1-15 was rewritten to provide illegitimates with the right to inherit from their putative fathers provided certain requirements were met. Id. Under the 1981 amendment, an illegitimate could inherit from and through the illegitimate's natural father and his kindred if one of three things happened: (1) the natural parents participated in a marriage ceremony before the birth of the child; or (2) there had been an adjudication of paternity or legitimacy before the death of the intestate; or (3) there had been an adjudication of paternity after the death of the intestate if the action seeking the adjudication of paternity was filed within one year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors, whichever is less. Id. This amendment was to be effective as of July 1, 1981, and was to be applied prospectively; but allowed for a three year savings period, notwithstanding the minority of the child, for any claim existing prior to that date.
Then, in 1983, § 91-1-15 was again amended by the Mississippi legislature. According to Kimble, supra, at 1280, "The 1983 amendment was not a substantive change in the statute, but rather, an attempt of the legislature to make certain that their intent be understood. The purpose of the 1983 amendment becomes abundantly clear upon reading of the preamble to the 1983 amendment:
"`WHEREAS, The Mississippi Legislature passed an act amending Section 91-1-15, Mississippi Code of 1972, and other sections of said code pertaining to the rights and claims of illegitimates, during the 1981 Regular Session, said amendment being effective from and after July 1, 1981; and
"`WHEREAS, Section 91-1-15 was so amended to provide for intestate succession among an illegitimate and the natural *871 father and his kindred with certain limitations, and to afford unto all illegitimate without classification a remedy whereby they could enforce their substantive rights and claims of intestate succession as provided for in said amendment; and
"`WHEREAS, the Legislature recognized that the decisions and statutes of this state existing prior to said amendment placed an unsurmountable barrier to inheritance by illegitimates when compared to the rights of a legitimate person, and that said decisions and statutes effectively barred an unnecessarily large number of illegitimates from inheritance through their natural father as a result of certain classifications into which the illegitimate may be categorized in violation of equal protection under the law; and
"`WHEREAS, it now appears that there is confusion as to the legislative intent in amending Section 91-1-15, Mississippi Code of 1972, and said section is now interpreted by some segments of the judiciary to mean that the Legislature did not intend to create a new, separate and distinct remedy for the benefit of all illegitimates without any classification and said amendment as now codified in Section 91-1-15, Mississippi Code of 1972, is interpreted by some segments of the judiciary to be prospective on rather than retrospective and prospective in effect and is interpreted not to have created a new, separate and distinct remedy for the claims of all illegitimates without classification; and
"`WHEREAS, the Legislature recognized at the time it was considering said amendment, that by creating said remedy the Legislature was opending [sic] the door to the possible litigation of stale or fraudulent claims and that a further effect of bestowing said remedy upon all illegitimates would possibly be to create a certain amount of confusion and uncertainty as to the status of titles to real property; however, the Legislature intended to bestow upon illegitimates a new and additional remedy whereby such illegitimates could maintain their rights of inheritance notwithstanding such interests of the state in preventing stale and fraudulent claims and avoiding uncertainty as to the titles of real property and, accordingly, the Legislature enacted appropriate periods of limitations within which illegitimates could bring their claims;

"`NOW, THEREFORE, in order to eliminate any ambiguity in Section 91-1-15, Mississippi Code of 1972, and to conform said section to express the true legislative intent. BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MISSISSIPPI'... ." (emphasis added)
Kimble, supra, at 1280-1.
Further, the 1983 Amendment included the following definition, pertinent to the case sub judice:
(a) "Remedy" means the right of an illegitimate to commence and maintain a judicial proceeding to enforce a claim to inherit property from the estate of the natural mother or father of such illegitimate....
Id. The Kimble Court termed the most significant aspect of "this remedial statute"
... is that it create a remedy in favor of illegitimates regardless of the date of death of the intestate but place a three year limitation period, after July 1, 1981, notwithstanding the minority of the child (illegitimate) within which to file such claim.
447 So.2d at 1281-2.
We mention "this significant aspect" primarily to highlight the language opted for not once, but twice, in calling § 91-1-15 a remedial statute by creating a remedy  and not an automatic right  for illegitimate children to inherit by and through their putative fathers.
This idea of affording those heretofore known at law as bastards a remedy from which they might share in their decedent fathers' estates is instigated by the U.S. Supreme Court decisions of Trimble v. Gordon, supra, and reinforced through the *872 decision of Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978) handed down the following year. This Court in Kimble, supra, noted Trimble as follows:
... is of profound importance to illegitimates who wished to assert their right to inherit from intestate fathers. The Court there held that an Illinois statute which prohibited an illegitimate from inheriting from his intestate father unless the father had acknowledged the child and the child had been legitimated by marriage of the parents was an unconstitutional denial of equal protection. The Court noted that there may be problems associated with giving illegitimates an equal right to inherit from an intestate father. Among these problems were the difficulty of proving paternity and the associated danger of false claims against the estate. The Trimble decision stated that these problems "might justify more demanding standards for illegitimates claiming under their father's estates from that required either for illegitimate children claiming under their mother's estates or for legitimate children generally." Trimble, 430 U.S. at 770, 97 S.Ct. at 1459, 52 L.Ed.2d at 39.
Kimble, supra, at 1279.
The Trimble Court found that, while § 12 of the Illinois Probate Act allowing illegitimate children to inherit by intestate succession only from their mothers violated the Equal Protection Clause of the Fourteenth Amendment, the Court would require, "`at a minimum, that a statutory classification [for illegitimates] bear some rational relationship to a legitimate state purpose'." Trimble, 97 S.Ct. at 1461, quoting the Constitutional Standard as set forth in Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768. Hence, we see approval by the nation's highest court of acts by a state's legislature incorporating into its statutory scheme certain standards at variance with those normally applied to inheritance by legitimate children in intestate succession.
After Trimble, the Supreme Court addressed again the right of illegitimates to inherit and the effect of a New York statute which required an adjudication of paternity prior to the death of the father in Lalli v. Lalli, supra. In Lalli, the Supreme Court held that New York's requirement that an order of affiliation be made during the lifetime of the father had a rational relation to the state's interest in providing for the just and orderly disposition of property at death. The Lalli Court ordered that "a number of problems arise that counsel against treating illegitimate children identically to all other heirs of an intestate father." 439 U.S. at 269, 99 S.Ct. at 525. The Court, in quoting the deliberations of the Bennett Commission, a creature of the New York Legislature given life in 1961, said:
An illegitimate, if made an unconditional distributee in intestacy, must be served with process in the estate of his parent or if he is a distributee in the estate of the kindred of a parent... . And, in probating the will of his parent (though not named a beneficiary) or in probating the will of any person who makes a class disposition to "issue" of such parent, the illegitimate must be served with process.... How does one cite and serve an illegitimate of whose existence neither family nor personal representative may be aware? And of greatest concern, how achieve finality of decree in any estate when there always exists the possibility however remote of a secret illegitimate lurking in the buried past of a parent or an ancestor of a class of beneficiaries? Finality in decree is essential in the Surrogates' Courts since title to real property passes under such decree. Our procedural statutes and the Due Process Clause mandate notice and opportunity to be heard to all necessary parties. Given the right to intestate succession, all illegitimates must be served with process. This would be no real problem with respect to those few estates where there are "known" illegitimates. The point made in the [Bennett] commission discussions was that instead of affecting only a few estates, procedural problems would be created for many  some members suggested a majority  of *873 estates. [In re Flemm's Will] 85 Misc.2d [855] at 859, 381 N.Y.S.2d [573] at 575-6.
439 U.S. at 269-70, 99 S.Ct. at 525.
Further, the Lalli Court stated that "even where an individual claiming to be the illegitimate child of a deceased man makes himself known, the difficulties facing the estate are likely to persist." 439 U.S. at 271, 99 S.Ct. at 526.
As recently as 1986, in Reed v. Campbell, 476 U.S. 852, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986), the Supreme Court held with reference to the constitutionality of § 42 of the Texas Probate Code that the state's interest in the orderly disposition of decedents' estates may justify imposition of special requirements upon an illegitimate child who asserts the right to inherit from her father, and, justifies the enforcement of generally applicable limitations on the time and manner in which the claim may be assessed.
The Supreme Court found in Reed that the state's rejection of the illegitimate's claim was not justified in the interest of orderly and just distribution of decedent's estate, and belated assertion of the claims by appellee should not have been denied. This denial occurred despite appellant's contention that Trimble did not apply and that appellee's claim was not asserted until later. Reed, supra, 106 S.Ct. at 2237.
Since the precedential U.S. Supreme Court decision in Trimble v. Gordon, and in cases following, and within the corresponding enactment of § 91-1-15 (Supp. 1981) by our legislature, this Court has considered numerous cases addressing (either on point or peripherally) the creation of a new remedy whereby illegitimates, who would have otherwise been barred by the holding of Knight v. Moore, 396 So.2d 31 (Miss. 1981), "could proceed under this new remedy known as an action to determine heirship." Jones by Jones v. Harris, 460 So.2d 120 (Miss. 1984). See, Matter of Heirship of McLeod, 506 So.2d 289 (Miss. 1987); Smith by and through Young v. Estate of King, 501 So.2d 1120 (Miss. 1987); Estate of Flowers by and through Campbell v. Gregory, 493 So.2d 950 (Miss. 1986); Miller v. Watson, 467 So.2d 672 (Miss. 1985); Alexander v. Alexander, 465 So.2d 340 (Miss. 1985); Jones by and through Jones v. Harris, 460 So.2d 120 (Miss. 1984); Ivy v. State Department of Welfare, 449 So.2d 779 (Miss. 1984); Estate of Kimble v. Kimble, 447 So.2d 1278 (Miss. 1984); Estate of Kidd v. Kidd, 435 So.2d 632 (Miss. 1983); In the Estate of Miller v. Miller, 409 So.2d 715 (Miss. 1982).
Unfortunately, the decisions handed down in many of these cases dealing with the right of the illegitimate to inherit under intestate succession reveal a disturbing trend by this Court to stray from the original intent of the legislature in promulgating the 1981 enactment of § 91-1-15. Further, the repercussions of having gone awry of said remedy for inheritance evidence a complete misunderstanding of other statutes dependent upon the definition and right of the heir therein, including but not limited to Miss. Code Ann. §§ 91-1-27, 91-1-29, 91-1-31 and 91-7-293. Cases involving issues important to these named statutes have wandered so far from what the legislature initially hoped to gain from the 1981 enactment of § 91-1-15 that what should be a remedial route for illegitimates has become the perfect means with which to afford what are only potential heirs an automatic right to come within the application of these code sections.
The recent case of Smith by and through Young v. Estate of King, 501 So.2d 1120 (Miss. 1987) illustrates just how far this Court has wandered from what the legislature intended in codifying a remedy for illegitimates to inherit under intestate succession. In Smith, the majority determined that because the administrator of the estate "had intentionally and fraudulently failed to disclose the existence of an illegitimate child to the court," the final decree adjudicating heirship should have been set aside despite the failure of the appellant minor to establish her paternity within the period set forth under Miss. Code Ann. § 91-1-15(3) (Supp. 1985). In its opinion the majority argued that the actions of the administratrix in failing to file a final account in accordance with § 91-7-295, *874 were sufficient to overcome her motion to dismiss as untimely appellant's petition to be declared one of the decedent's heirs.
However, in so doing the majority ignores the basic premise, intent and language of these statutes. The "parties interested" who must be included in the final account and who are entitled to receive summons are the "heirs or devisees or legatees of the estate, so far as known." Miss. Code Ann. § 91-7-293 (Supp. 1985). Further, the case cited in support of the majority's proposition, Diamond v. Connolly, 251 F. 234 (9th. Cir.), cert. denied 248 U.S. 561, 39 S.Ct. 7, 63 L.Ed. 422 (1918) does not purport to extend the remedy given illegitimates any further than our own statutes. In Diamond, the Ninth Circuit Court of Appeals said:
[I]t was obligatory upon Connolly as administrator to apply to the court in his representative capacity, and it is too plain for argument that his duty was to advise the court in absolute good faith of all the knowledge he possessed concerning the persons who under the law were entitled to the estate. (Emphasis supplied). Diamond v. Connolly, 251 F. 234 (9th Cir.), cert. denied, 248 U.S. 561, 39 S.Ct. 7, 63 L.Ed. 422 (1918).
Smith, supra, at 1123.
In this quote, supra, the majority has highlighted the pertinent portion of our argument well: illegitimates are not "under the law entitled to the estate" except as when they have met the requirements established under § 91-1-15(3). Failure to do so precludes all else, including the right to be a part of the final account, or to receive summons, or to eventually inherit from the decedent's estate. This is true regardless of the extent of knowledge and reliability thereof the administrator may have of any "potential heir" in existence. Failure to include or disclose the illegitimate does not constitute any fraud or deception, simply because the illegitimate does not come within the protection given heirs under our statutes or the common law until he has established his paternity.
Hence, this Court's decision in In the Matter of the Estate of John Flowers deceased: Dorothy Nell Campbell a/k/a Dorothy Mae Campbell v. Marian Gregory, et al., 493 So.2d 950 (Miss. 1986) was based as well on the same erroneous assumption that the illegitimate daughter therein, purported to have been fraudulently omitted by the administrator of the estate in the final account, was entitled to be accorded the same rights and privileges as a known heir.
We believe that the lower court in Flowers correctly ruled that the illegitimate's petition to be included in the administration of the estate was untimely made pursuant to § 91-1-15(3), but this Court reversed based upon what it incorrectly deemed to be fraud upon the Court. We point out only that the daughter was not a "predetermined heir" known to the administrator; therefore, no fraud had occurred. See, Purinton v. Dyson, 8 Cal.2d 322, 65 P.2d 777 (1937).
In Jones v. Harris, 460 So.2d 120 (Miss. 1984), the U.S. Court of Appeals for the Fourth Circuit, 712 F.2d 924, certified a question for resolution dealing with the right of illegitimate children to be answered by this Court.
The question certified is stated as follows:
Accepting that there is such differentiation as between legitimate children on the one hand and illegitimate children on the other hand in the applicable Mississippi statutory provisions governing rights of inheritance (compare Miss.Code § 91-1-15 of Trusts and Estate Title, Descent and Distribution Chapter with § 91-1-3 and § 91-1-11), as to render the less favorable treatment of illegitimate children unconstitutional and void, does the law of the State of Mississippi call for interpretation of the Mississippi statutes governing descent and distribution or common law to apply and extend to illegitimate children the benefits available to legitimate children, or would Mississippi achieve that result only by virtue of Federal constitutional imperative?
Jones, supra, at 121.
Chief Justice Walker, then a presiding justice and speaking for the Court, declined *875 to answer the question certified. However, in its opinion the Court quotes Estate of Kidd v. Kidd, 435 So.2d 632 (Miss. 1983) in which it was emphasized that while illegitimates are to be afforded equal protection of the law, the state in promulgating certain limitations under § 91-1-15 has a legitimate interest in "(1) avoiding the litigation of stale or fraudulent claims; (2) the fair and just disposal of an intestate decedent's property; and (3) the repose of titles to real property." 460 So.2d at 122.
This represents exactly the rationale behind our perpetuating some differences between the inheritance rights of legitimates and illegitimates, as approved of by the U.S. Supreme Court in Trimble v. Gordon, and cases following. Trimble opened the door for illegitimate minors, holding that a state's statutory discrimination against illegitimate children in its law governing intestate succession violated the Equal Protection Clause of the Fourteenth Amendment, and henceforth illegitimates may inherit through their natural fathers rather than through their mothers only. This is because "(1) such discrimination cannot be justified on the basis of the state's interest in promoting legitimate family relationships or the state's interest in establishing a method of property disposition through which proof of a lineal relationship is more readily ascertainable, (2) it is irrelevant, for the purpose of constitutionality, that a father with an illegitimate might avoid the effect of statutory discrimination by writing a will, and (3) the discrimination is not justifiable on the ground that the intestate succession allowing illegitimate children to inherit only from their mothers mirrors the intentions of the state's citizens regarding disposition of property in view of the provisions not being enacted for such purpose." Trimble, 430 U.S. at 762, 97 S.Ct. at 1459.
In Lalli, however, the high court opted instead to hold as constitutional a challenged New York statute which purports to allow illegitimates to inherit through their fathers only if a court of competent jurisdiction, during the father's lifetime, enters an order of affiliation declaring paternity. In so rejecting the contention that the statute violated the Equal Protection Clause of the Fourteenth Amendment by discriminating on the basis of illegitimate birth, the Supreme Court found the lower court properly excluded an illegitimate child as a distributee of an estate for failure to meet the statutory requirement. Justice Powell, announcing the judgment of the Court, wrote that certain "discreet procedural safeguards" placed upon illegitimate children bear an evident and substantial relation to the state interests in the New York statute is designed to serve, including but not limited to the just and orderly disposition of property at death.
We agree with both the Trimble and Lalli decisions, and believe the case at bar should follow the straight and narrow of their path. Without the benefit of certain procedural safeguards, the titles to land would float around endlessly, never to vest. Further, we note that this rationale is unchanged, prior to a recent string of erroneous decisions: statutes such as §§ 91-1-27 and 91-1-29 incorporated in the Code of 1906, remain without amendment to this day. The same is true of § 91-1-293, relied upon in Smith, which, instituted in the Code of 1892, has received no amendment up to the present date.
Rodney Leflore and Dacia Primer failed to assert their claim to share in the estate of Willie J. Primer until after the expiration of 90 days of the first publication of notice to creditors as required by Miss. Code Ann. § 91-1-15(3)(c). Therefore, both their claim of heirship and action for wrongful death are barred. Nor were applicants entitled to have process issued upon them pursuant to § 91-1-29.
In our view, the learned chancellor did not err when he ruled that timely compliance with Miss. Code Ann. § 91-1-15(3)(c) was required in this case, as did the circuit judge.
The decision of the lower courts of both Leake and Madison Counties should be affirmed.